**STATE of Minnesota, Respondent,**

v.

**Daniel Peter DIRCKS, Appellant.**

**No. C1–87–497.**

Court of Appeals of Minnesota.

Sept. 29, 1987.

Review Denied Nov. 24, 1987.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, Thomas L. Johnson, Hennepin Co. Atty., Vernon E. Bergstrom, Chief, Appellate Section, Paul R. Jennings, Asst. Co. Atty., Minneapolis, for respondent.

C. Paul Jones, MN State Public Defender, Cathryn Middlebrook, Asst. State Public Defender, Minneapolis, for appellant.

Considered and decided by PARKER, P.J., and WOZNIAK and NIERENGARTEN, JJ., with oral argument waived.

## OPINION

WOZNIAK, Judge.

This appeal is from a sentence imposed for second degree murder following a plea of guilty. The court sentenced appellant Daniel Dircks to 324 months in prison, a departure of 2.3 times the presumptive sentence of 140 months under the sentencing guidelines. We affirm.

## FACTS

Appellant Daniel Dircks was indicted for first degree murder for the death of his girlfriend, Denise Parrow, the night of January 7, 1986. Dircks admitted the homicide the same night to a neighbor and to police. The only issues anticipated at trial were the degree of homicide, given Dircks's claim to have acted in the heat of passion after discovering Parrow with another man, and self-defense.

Dircks moved the court on November 3, 1986, to accept his plea of guilty to second degree murder. Minn.R.Crim.P. 15.07. The state opposed the motion. The court at sentencing described the state as taking no position on the motion. The court took the motion under advisement and the case continued on to an omnibus hearing.

At the omnibus hearing on December 1, 1986, the trial court granted Dircks's Rule 15.07 motion to plead guilty to the lesser included offense of second degree murder. The plea was accepted on the understanding Dircks could be sentenced to as much as 27 years (324 months) for the offense. The omnibus hearing transcript is not in the record.

At the sentencing hearing, the trial court characterized the plea as a negotiated plea, and stated to Dircks.

I indicated to your attorney and to the county attorney's office that I would not accept the plea to Murder Two with anything less than a possibility of my giving you 27 years, and you knew that. * * * All that means to me is that when you appeared here today * * * you knew full well probably what is going to happen today is that the judge is going to give me 27 years. * * * *.

I am sure if I were to say something less than 27 years, your attorney, the assistant county attorney and everybody else in this courtroom, a number of people in this courtroom would say, "What is the Judge doing. What is his line of thinking." My line of think[ing] is still the same as it was back on December the first.

The court sentenced Dircks to 324 months (27 years) in prison, citing the prosecution's recommended reasons for departure.

Dircks testified at the guilty plea hearing that after getting off work on January 7, he had seen Denise at the laundromat, had gone to the basement apartment they shared, fallen asleep, awoke and went out for a walk. When he returned, he found Denise in the apartment with a man he did not recognize, each of them nude. After the man left, he and Denise argued. He testified Denise then threw a white powder (lye) in his face, burning his mouth and throat. Enraged, he picked up a razor lying nearby and slashed her four or five times in the throat. He put her down on the bed and went to a corner, where he cried. He thought he had killed her.

Denise made a slight movement on the bed and made a gurgling sound. Dircks testified he thought she was in pain, so he hit her with a baseball bat, intending to kill her. He hit her with such force the bat broke lengthwise. Dircks testified he then felt her, but found no pulse or heartbeat.

Dircks admitted placing a sleeping bag and mattress over Denise and setting it on fire. He testified he was sure she was dead. He could not say why he started the fire, but testified he was still angry and his throat still hurt. Dircks then went upstairs. After returning to the basement for a last look, he went outside where he confronted a stranger, who lived nearby, and told him he had killed his girlfriend. Police and the fire department were called and Dircks made the same confession to a police officer.

At the sentencing hearing, the state made an offer of proof of what it would have presented at trial to rebut Dircks's version of the offense. The first item of evidence was a blood-type comparison of Dircks's blood and saliva with semen found in Denise's underwear. Both were type B blood. Therefore, the state argued the evidence was consistent with Dircks having had sex with the victim.

The second item of evidence was a medical report indicating the victim had soot in her throat and high levels of carbon monoxide in her blood. The state claimed this showed, and the medical examiner would testify, she was breathing when the fire was set.

The third item of evidence was medical testimony that the lye which burned Dircks's mouth and throat was self-ingested.

The trial court adopted the prosecution's recommended reasons for departure in its departure report:

1. At the time of the defendant's plea he agreed that the Court could impose a sentence as high as 27 years in prison.

2. The attack occurred at the victim's place of residence.

3. The victim suffered repeated, deadly blows. Apparently the defendant cut the victim's throat five times with a razor blade, then struck her with a baseball bat three times on the head, and then set the premises on fire.

4. The defendant employed three different deadly instruments: a razor blade, a baseball bat, and a fire.

5. The defendant mutilated the victim.

6. The attack occurred over an extended period. According to the defendant, it took place over an approximate three-hour period.

7. It appears the defendant attempted to hide or conceal the victim's body along with the evidence of his crime by setting the fire.

The court sentenced Dircks to 324 months (27 years) in prison, 2.3 times greater than the presumptive sentence of 140 months.

## ISSUE

Did the trial court abuse its discretion in imposing a greater-than-double durational departure?

## ANALYSIS

■ A greater-than-double durational departure requires "severe aggravating circumstances." *State v. Mortland,* 399 N.W.2d 92, 94 (Minn.1987); *see also State v. Evans,* 311 N.W.2d 481, 483 (Minn.1981). Dircks contends the facts of Denise Parrow's death were not so severe or "unusually compelling," *Evans,* 311 N.W.2d at 483, when compared to other second degree murders as to justify the sentence he received. We disagree.

A defendant cannot bind the court to his version of the facts of the offense by minimizing his guilt when testifying at the guilty plea hearing. *State v. Winchell,* 363 N.W.2d 747, 749 (Minn.1985). Dircks testified he cut Denise Parrow with a razor when provoked by the lye thrown in his face, that he then hit her with the bat to put her out of her pain, and set the fire for a reason he could not or would not state, but after he was sure she was dead. The state, however, offered to prove Dircks had ingested the lye himself and that Parrow was still breathing when the fire was started. Moreover, the court was not required to accept Dircks's contention he discovered Parrow with another man and therefore committed the first assault under the influence of extreme passion.

■ The three separate attacks on Denise Parrow, by three different deadly instruments, constituted severe aggravating circumstances justifying a greater-than-double durational departure. The manner of use of a single deadly weapon, or two similar instruments, has been held sufficient to establish particular cruelty and to justify a double or less-than-double departure. *See State v. Campbell,* 367 N.W.2d 454, 456 (Minn.1985) (double departure where victim maced, her throat cut ear-to-ear and stabbed 17 times); *State v. Vogelpohl,* 326 N.W.2d 635, 636 (Minn.1982) (victim hit on head eight times with two different hammers; sentence was 1½ times the presumptive sentence); *see also State v. Rathbun,* 347 N.W.2d 548 (Minn.Ct.App. 1984) (victim who was drunk was stabbed 23 times; approximate 1⅓ departure). Dircks's conduct in setting fire to Denise Parrow's body when the medical evidence shows she was still breathing went further, and constituted the "unusually compelling facts" justifying the greater-than-double durational departure.

■ We need not address the other aggravating factors cited in the departure report. We note, however, that Dircks's agreement to the 27-year sentence, even if shown, would not have been an aggravating circumstance. *See State v. Garcia,* 302 N.W.2d 643, 647 (Minn.1981) (court properly refused to rely on negotiated sentence term as a factor in departure); *see also State v. Theisen,* 363 N.W.2d 867, 869 (Minn.Ct.App.1985) (improper to consider plea bargain as aggravating factor).

Dircks was initially indicted for first degree murder. Minnesota Rule of Criminal Procedure 15.07 permits the court to accept a plea to a lesser-included offense without the prosecutor's consent. *State v. Carriere,* 290 N.W.2d 618, 620 (Minn.1980). The prosecution, however, then makes an·offer of proof in opposition to the plea, demonstrating its ability to withstand a motion to dismiss on the greater offense. Minn.R. Crim.P. 15.07; *see, e.g., State v. Hyatt,* 402 N.W.2d 614, 616 (Minn.Ct.App.1987), *pet. for rev. denied* (Minn. April 29, 1987). The rule does not, at least explicitly, allow the prosecution to stand aside and take no position on acceptance of the plea.

■ There is no transcript in the record of the omnibus hearing. The comments at the sentencing hearing, however, indicate the court itself may have negotiated the plea. A trial court, however, is *not* bound by a plea agreement as to any sentence to be imposed. *See* Minn.R.Crim.P. 15.04, subd. 3(1), (2); *see also State v. Pendzimas,* 379 N.W.2d 247, 248 (Minn.Ct.App. 1986) (court cannot rely on plea agreement as grounds for departure).

## DECISION

There were severe aggravating circumstances supporting the 2.3 times durational departure.

Affirmed.