**Clemmie Howard TUCKER, Jr.,
petitioner, Appellant,**

v.

**STATE of Minnesota, Respondent.**

**No. A09–666.**

Court of Appeals of Minnesota.

Jan. 19, 2010.

Marie L. Wolf, Interim Chief Appellate Public Defender, Ngoc Nguyen, Assistant Public Defender, St. Paul, MN, for appellant.

Lori Swanson, Attorney General, St. Paul, MN; and Michael O. Freeman, Hennepin County Attorney, Lee W. Barry, III, Assistant County Attorney, Minneapolis, MN, for respondent.

Considered and decided by SHUMAKER, Presiding Judge; WORKE, Judge; and CONNOLLY, Judge.

## OPINION

SHUMAKER, Judge.

In this appeal from the district court's denial of postconviction relief, appellant contends that the district court's upward durational departure from the presumptive sentence was not supported by a proper aggravating factor and that appellant's attorney rendered ineffective assistance in failing to contest the improper sentence. We affirm.

## FACTS

At 2:25 a.m. on June 24, 2005, A.G. left a north Minneapolis bar with appellant

Clemmie Tucker. A.G. drove her car and Tucker drove his truck as they engaged in, what Tucker agreed was, a "cat-and-mouse sort of chase." When A.G. stopped her car in a residential neighborhood, Tucker got out of his truck, walked to the front of the car, pulled out his gun, and fired a shot through the windshield of A.G.'s car into the area of the driver's seat where A.G. was located.

Without determining whether A.G. had been struck by the bullet, Tucker left the scene. He did not report the incident or summon anyone to investigate, but he did call 911 and stated that his gun had been stolen.

The bullet had in fact struck A.G. in the chest and eventually the police found her in the car, bleeding and struggling to breathe. She died later at the hospital from the gunshot wound.

An investigation led to Tucker, and the state charged him with second-degree intentional murder, which carries a presumptive executed sentence of 306 months. Tucker agreed to plead guilty to second-degree unintentional murder and to an upward durational departure of an executed sentence of 225 months instead of the presumptive executed sentence of 150 months. The departure was to be based on Tucker's failure to render assistance to A.G. and his invasion of her zone of privacy by shooting into her car.

The district court approved the plea agreement and sentenced Tucker accordingly. Tucker later petitioned for postconviction relief to correct the sentence, arguing that the departure bases were improper. Ruling that, even though the zone-of-privacy invasion was not a proper departure basis, Tucker's failure to render assistance is an aggravating circumstance that justified an upward durational departure, the district court denied Tucker's petition. This appeal followed. Tucker also contends that his attorney failed to represent him effectively because he facilitated Tucker's agreement to be sentenced upon improper departure factors.

## ISSUE

The appellant fired a bullet through the windshield of a car and into the area in which a person was seated. Without ascertaining whether the shot injured that person and without summoning any assistance for the person, the appellant fled the scene. The person was wounded by the shot and died later.

Did the appellant's failure to summon assistance for the victim constitute the aggravating sentencing factor of particular cruelty despite the appellant's lack of knowledge of the victim's injury?

## ANALYSIS

■■■ The rulings of the district court on a petition for postconviction relief will not be reversed absent a clear abuse of discretion. *Rairdon v. State*, 557 N.W.2d 318, 326 (Minn.1996). The court clearly abuses its discretion if it declines to correct an illegal sentence. *See State v. Stutelberg*, 435 N.W.2d 632, 636–37 (Minn. App.1989) (reversing and remanding to postconviction court to correct defendant's improperly calculated sentence). An unsupported or improperly supported departure from the presumptive sentence, or from the permissible discretionary sentencing range, provided by the Minnesota Sentencing Guidelines is an illegal sentence. *State v. Stanke*, 764 N.W.2d 824, 827 (Minn.2009).

■■■ The district court may, in the sound and proper exercise of its discretion, depart from the presumptive sentence, or from the permissible sentencing range, only if it is able to identify relevant substantial and compelling circumstances that

warrant a different sentence. *State v. Kindem*, 313 N.W.2d 6, 7 (Minn.1981). Any departure that increases the severity of the sentence must be supported by at least one aggravating factor. *State v. Dominguez*, 663 N.W.2d 563, 567 (Minn. App.2003). An aggravating factor expressly provided in the sentencing guidelines as a proper departure basis is that "[t]he victim was treated with particular cruelty for which the individual offender should be held responsible." Minn. Sent. Guidelines II.D.2.b.(2) (2005). This was one of the aggravating factors that Tucker agreed was present, that the district court relied upon in departing durationally from the presumptive sentence, and that the district court approved in denying Tucker's petition for postconviction relief to correct his sentence.

■ If "particular cruelty" is a legitimate departure basis in this case, it is the only proper aggravating factor that exists. As the postconviction court correctly found, zone-of-privacy was not a permissible departure factor in this case. And Tucker's plea agreement alone, without the identification of substantial and compelling aggravating circumstances, will not suffice to sustain a departure. *State v. Misquadace*, 644 N.W.2d 65, 71 (Minn.2002).

Three cases in Minnesota provide some authority that particular cruelty as a sentencing departure factor can take the form of failure to render, obtain, or summon aid for a victim injured by the offender or as a result of the offender's participation in the crime that caused the injury. In one case, a mother was found guilty of murder, malicious punishment of a child, and other crimes that led to the death of her three-year-old daughter, who was determined to have been the victim of battered-child syndrome. *State v. Morrison*, 437 N.W.2d 422 (Minn.App.1989), *review denied* (Minn. Apr. 26, 1989). In sentencing, the district court imposed a double durational departure from the presumptive sentence, citing as one of the departure grounds the offender's failure to obtain medical help for her severely beaten child. *Id.* at 429. We affirmed the departure on that and other grounds. *Id.*

The next case involved a burglary and an assault and aggravated robbery of an 82-year-old man in his home. *State v. Jones*, 328 N.W.2d 736 (Minn.1983). The defendant's accomplice severely beat the man and left him in critical condition. *Id.* at 737. The district court declined to depart in sentencing the defendant on the aggravated-robbery charge because the court believed the defendant did not participate in the beating. *Id.* at 738. The court did, however, impose consecutive sentences, which under the guidelines constituted a departure and increased the defendant's total sentence by 16 months. *Id.*

In an appeal that challenged the aggravated sentence, the supreme court held that aggravating circumstances were present, even accepting the district court's conclusion that the defendant did not participate in beating the victim, saying:

> Even if defendant did not inflict the injury on the victim, as a participant in the robbery he was legally responsible for the injury under Minn.Stat. § 609.05 (1980). Further, his act in leaving the victim in a beaten condition and in failing to notify the paramedics anonymously relates back and supports the view that the crime was committed in a particularly cruel way.

*Id.*

We note that in both *Morrison* and *Jones* the evidence showed that the respective offenders knew of the injured conditions of the victims.

In *State v. Stumm*, 312 N.W.2d 248, 248 (Minn.1981), the defendant was convicted

of manslaughter of his girlfriend's two-year-old child that resulted when he hit the child a number of times on the chest to get him to "stop whining." Although the child apparently showed no instant outward signs of injury, the blows had lacerated his small intestine which then became infected and led to the child's death. *Id.* at 248–49. Other than having vomited three times that day, the severity of his injury did not fully manifest until the next day when the defendant found that the child "was purple and not breathing." *Id.* at 249. The defendant then called the child's mother and a doctor, but the child died before an ambulance arrived. *Id.*

In imposing an aggravated durational sentence, the district court cited as one of the grounds the particular cruelty of the offense, which included the defendant's "apparent indifference towards caring for that child" after the beating. *Id.* Affirming the departure, the supreme court held the departure grounds to be valid and to satisfy the requirement of substantial and compelling circumstances. *Id.*

■ Tucker argues that, unlike the offenders in *Morrison* and *Jones,* he did not know that A.G. was injured. Sterile logic would thus support the proposition that an offender cannot be accused of failing to aid an injured victim if the offender is not aware of the injury. *Stumm* brings us a little closer to a slightly more expansive, but equally valid, view of particular cruelty through a failure to render or obtain aid. The defendant struck a two-year-old child in the chest several times and caused immediate internal injury, but the injury did not become apparent until later when the child vomited three times. *Id.* It was then too late to save the child. *Id.* Although the defendant did not know of the injury when it occurred, he showed complete indifference as to whether his assault had caused any injury. *Id.* Had he been vigi-

lant and examined the child, or at least responded appropriately to the child's first vomiting, the child might have been saved. A reasonable person would have considered the possibility that such a beating would cause some injury to an infant and the particular cruelty lay in the offender's failure to inquire further and failure to obtain medical help if necessary.

■ Although none of the cited authorities is completely analogous here, we can derive from them an interpretation of "particular cruelty" that is especially apt in this case and is consistent with sentencing-departure jurisprudence: When an offender's conduct is sufficiently egregious that a reasonable person in the same circumstances would suspect that the conduct very likely caused injury to the victim, it is particularly cruel for the offender to fail to take some meaningful step, even anonymously, toward obtaining at least an investigation so as to be able to give medical aid to the victim if an examination reveals that aid is necessary. This principle, of course, would not logically extend to conduct intended and calculated to cause injury or death because the cruelty would be inherent in the intentional act. This is not the case here. The facts do not show an intent to injure, and the crime of conviction was second-degree *unintentional* murder.

■ A reasonable person in Tucker's circumstances, even lacking verification of A.G.'s injury, would have to assume that a bullet fired through a windshield directly into the area of a car in which another person was seated likely hit and injured that person. Whether he actually knew of A.G.'s injury is not dispositive because Tucker should have known of that possibility. His "particular" cruelty—beyond that of the crime itself—was his indifference as to whether A.G. was in fact injured and needed medical attention. The special cruelty of such indifference is clear be-

cause it can mean that the offender not only inflicted serious injury but also deprived the victim of at least a chance to survive the injury.

In neither *Stumm* nor here does the evidence show that the victim would have survived had the offender done something to obtain medical assistance, but the possibility is at least arguable. The child in *Stumm* died from an infection that was precipitated by the injury and left to spread over many hours. *Id.* at 248–49. A.G. was alive at the scene of the shooting but was bleeding and struggling to breathe. She lived long enough to be transported to the hospital. We can only speculate as to whether earlier medical assistance would have saved A.G., but Tucker's cruel indifference to the possibility of an injury that required immediate emergency care ensured that no such assistance would be rendered.

Finally, because Tucker's pro se arguments relating to the ineffective assistance of counsel are premised on defense counsel's failure to dispute the validity of the grounds for departure, we need not address the issue further.

### DECISION

On the facts of this case, the aggravated sentencing departure was supported by the valid factor of particular cruelty, and the district court did not abuse its discretion in denying Tucker's postconviction petition to correct his sentence.

**Affirmed.**