STATE of Minnesota, Respondent,

v.

Gordon Douglas WEAVER, Appellant.

No. A10–1053.

Court of Appeals of Minnesota.

May 3, 2011.

562

Lori A. Swanson, Attorney General, St. Paul, MN, John J. Choi, Ramsey County Attorney, Mitchell L. Rothman, Assistant County Attorney, St. Paul, MN, for respondent.

Paul C. Engh, Joseph S. Friedberg, Minneapolis, MN, for appellant.

Considered and decided by MINGE, Presiding Judge; LARKIN, Judge; and CRIPPEN, Judge.[*]

## OPINION

LARKIN, Judge.

In this post-remand appeal, appellant challenges his sentence of 225 months on one count of second-degree unintentional felony murder, which constitutes a 75–month upward-durational departure from the presumptive sentence. Appellant claims that the district court erred in relying on impermissible departure grounds and in refusing to grant a downward-durational departure. Because the upward departure is supported by valid departure reasons, the sentence is within the district court's discretion, and it is reasonable to conclude that the district court would have imposed the same sentence absent reliance on an allegedly improper aggravating factor, we affirm.

## FACTS

In 2005, a jury found appellant Gordon Douglas Weaver guilty of second-degree unintentional felony murder for his role in the death of his wife, J.W. Weaver appeal-

ed, and this court reversed his conviction and remanded for a new trial. On remand, Weaver waived his right to a jury trial on the issue of guilt, as well as his right to a sentencing trial on facts that might support a sentencing departure. The two pending charges of second-degree unintentional felony murder under Minn. Stat. § 609.19, subd. 2(1) (1998), which were based on the predicate offenses of first-degree arson and third-degree assault, were tried to the district court.

At trial, Weaver testified that he and his wife, J.W., had an argument in the laundry room of their home. He became angry and pushed her. J.W. stumbled, fell, and struck her head on a washtub. Weaver testified that after J.W. fell to the ground, she stopped breathing and went limp. J.W. appeared completely unresponsive, and Weaver could not detect her pulse. Weaver concluded that J.W. had died. Weaver testified that when he realized his wife was dead, he decided to burn down the house. Weaver poured solvents throughout the laundry room and ignited them.

J.W.'s sister and brother-in-law arrived at the home to look for J.W. when she did not arrive at a scheduled meeting with her sister. J.W.'s sister noticed that the home's windows were blackened and asked her husband to call 911. Firefighters responded and located J.W.'s body in the home. Much of the clothing on J.W.'s torso had been destroyed by the fire, and plastic from a light fixture had melted onto her body. She had multiple burns; some areas of her skin were completely burned away.

Dr. Susan Roe, who performed J.W.'s autopsy, testified that J.W. had suffered blunt trauma above her right and left eyes

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

and a blunt-force injury to the back of her head. J.W. also had a skull fracture and associated brain swelling. Her lungs contained soot, and she had a lethal 61.4% carbon-monoxide blood level.

The cause of J.W.'s death was disputed at trial. The state called Dr. Roe and Ramsey County Medical Examiner Dr. Michael McGee. They testified that J.W. was alive during the fire and that she died from a lack of oxygen attributable to carbon monoxide inhalation during the fire. The defense called Dr. David Ketroser, a neurologist, and Dr. John Plunkett, a consultant and retired medical examiner. They testified that they could not say definitively whether J.W. died from her head injury or carbon-monoxide poisoning. Dr. Ketroser testified that the head injury and the carbon monoxide may have acted in concert to cause J.W.'s death. Dr. Plunkett testified that he could not say that both injuries caused J.W.'s death.

Weaver testified that when he lit the fire, J.W. was not breathing, she had bled extensively, and she had gone limp. Weaver also testified that he was unable to locate J.W.'s pulse. Dr. Ketroser confirmed that the pressure on J.W.'s brain stem would have made her eyes and pupils unresponsive, slowed her heart beat, and caused her breathing to become irregular. Dr. Roe agreed that, if Weaver observed the symptoms he described, it would have been possible for Weaver to think that J.W. was dead.

The district court found Weaver guilty of both counts of unintentional felony murder and made oral findings of fact in support of its verdict. The district court found that "[J.W.] died as a result of the asphyxiation by carbon monoxide poisoning due to a house fire." The district court's finding that J.W. was alive during the fire was based on evidence that "[J.W.'s] lungs had soot and small particles of food[,] [w]hich indicated a terminal aspiration of food. Soot extended past the trachea into the main stem bronchi, and into the lungs, which confirmed that [J.W.] was alive at the time of the fire." The district court also determined that "[J.W.] could have survived the head injury if given medical assistance with medical efforts to reduce swelling and use life support." Although the district court determined that J.W. was alive when the fire started, it also determined that Weaver believed that she was dead. The district court found that "[Weaver] knew that he had caused the death of his wife, and had done something wrong. [Weaver's] intent was to burn the house, the entire structure and everything in it. Including the body of [J.W.]"

At sentencing, Weaver requested a downward-durational departure from the presumptive sentence of 150 months to 105 months. The state requested an upward-durational departure to 300 months. The district court denied Weaver's motion and imposed an executed prison sentence of 225 months on one count of felony murder with first-degree arson as its predicate offense.[1] The district court cited "particular cruelty" as the basis for its sentencing departure. This appeal follows, in which Weaver challenges his sentence.[2]

---

1. The district court did not impose a sentence for the felony-murder conviction with third-degree assault as its predicate offense.

2. Weaver originally challenged the sufficiency of the evidence to sustain his convictions, arguing that the "[e]vidence of multiple causes of death on the two felony murder counts renders doubtful a singular cause as to each." But because Weaver expressly waived this challenge at oral argument, we do not consider it.

## ISSUES

I. Did the district court abuse its discretion in imposing an upward-durational departure?

II. Did the district court abuse its discretion in denying appellant's request for a downward-durational departure?

## ANALYSIS

### I.

We first address Weaver's claim that the district court erred in imposing a sentence of 225 months, which constitutes a 75–month upward-durational departure. *See* Minn. Sent. Guidelines IV (Supp.1999) (providing that the presumptive sentence for second-degree unintentional murder, a level IX offense, is 150 months where the offender has zero criminal history points).

 "The Minnesota Sentencing Guidelines were created to promote uniformity, proportionality, rationality, and predictability in sentencing." *State v. Edwards,* 774 N.W.2d 596, 601 (Minn.2009). The legislature, through the use of guidelines, seeks to ensure that "sanctions following conviction of a felony are proportional to the severity of the offense of conviction and the extent of the offender's criminal history." Minn. Sent. Guidelines I (1998). Departures from the presumptive sentence are intended to be the exception, having application "to a small number of cases." *State v. Misquadace,* 644 N.W.2d 65, 68 (Minn.2002). Unless there are "substantial and compelling circumstances" to warrant an upward departure, the district court must order the presumptive sentence provided by the guidelines. Minn. Sent. Guidelines II.D (1998). Substantial and compelling circumstances exist when "the defendant's conduct in the offense of conviction was significantly more or less serious than that typically involved

in the commission of the crime in question." *Misquadace,* 644 N.W.2d at 69.

 We review sentencing departures for an abuse of discretion. *Taylor v. State,* 670 N.W.2d 584, 588 (Minn.2003). "[I]f a district court's reasons for a departure are stated on the record, an appellate court must determine whether the stated reasons justify the departure." *State v. Grampre,* 766 N.W.2d 347, 351 (Minn.App. 2009), *review denied* (Minn. Aug. 26, 2009). But first, this court must determine whether the reasons provided are legally permissible and factually supported by the record. *See Edwards,* 774 N.W.2d at 601. We conduct a de novo assessment of the district court's decision as to whether a valid departure ground exists, relying on the factual findings that support the decision. *Dillon v. State,* 781 N.W.2d 588, 598 (Minn.App.2010), *review denied* (Minn. July 20, 2010). The district court abuses its discretion if it relies on an invalid departure ground. *Id.*

The district court provided two reasons to support its upward departure and categorized these reasons as "particular cruelty." The district court explained:

> [(1)] At the point [Weaver] realized that [J.W.] was hurt, [he] failed to summon aide that could have saved her life. [(2)] In addition, instead of calling for help [Weaver] callously poured accelerant throughout the laundry room and started a fire in an effort to destroy evidence, the home[,] and the body of [J.W.].

Weaver challenges each of the district court's stated departure reasons. We address each reason in turn.

*Failure to Render Aid*

 Weaver argues that the district court is collaterally estopped from relying on failure-to-render-aid as a departure ground. "The doctrine of collateral estop-

pel will bar a prosecution where the second prosecution requires the relitigation of factual issues already resolved by the first." *State v. McAlpine*, 352 N.W.2d 101, 103 (Minn.App.1984) (quotation omitted). Weaver argues that the jury's answer of "no," in the first trial, to a special interrogatory that asked whether J.W. was "particularly vulnerable due to age, infirmity or reduced physical or mental capacity which was known or should have been known" to Weaver, is a finding that Weaver perceived J.W. to be dead when he set the fire, which "collaterally bars" departure on the ground that Weaver failed to summon aid that could have saved J.W.'s life. Weaver also argues that in acquitting him of first-degree murder in the first trial, the jury implicitly found, consistent with Weaver's testimony, that Weaver believed J.W. was dead when he started the fire.

In announcing its findings of fact after the trial on remand, the district court stated:

> After [J.W.] fell to the floor of the basement [Weaver] either did not check, or did not check [J.W.] well enough to determine if she was still alive. [Weaver] did not attempt to assist [J.W.]. [Weaver] did not call for help. [Weaver] instead took accelerants that were present in the laundry room [and] ... splashed the accelerants on the shelves, floor, ironing board, and throughout the laundry room. [Weaver] then lit the accelerants on fire. The fire flared up and [Weaver] left. [Weaver] *knew that he had caused the death of his wife*, and had done something wrong. [Weaver's] intent was to burn the house, the entire structure and everything in it. Including the body of [J.W.]

(Emphasis added.)

These findings indicate that when Weaver started the fire, he believed that J.W. was dead. Thus, even if we were to assume, for the purpose of argument, that the jury in the first trial found that Weaver believed that J.W. was dead when he started the fire and that relitigation of this fact on remand was therefore impermissible, because the district court made a *consistent* finding on remand, the collateral-estoppel doctrine does not appear to provide a basis for relief.

But Weaver also argues that because he believed that J.W. was dead, his failure to render aid was an improper departure ground. We recently held that "failure to render or obtain aid for a victim is a form of particular cruelty that, in appropriate circumstances, may be the basis for an aggravated sentencing departure." *Tucker v. State*, 777 N.W.2d 247, 248 (Minn. App.2010), *review granted* (Minn. Mar. 30, 2010). In *Tucker*, the defendant fired a gun into the victim's car and failed to investigate whether the victim was injured. *Id.* at 249, 251–52. The victim had been struck by the bullet and later died. *Id.* at 249. This court affirmed a 75–month upward departure reasoning that "it is particularly cruel for the offender to fail to take some meaningful step, even anonymously, toward obtaining at least an investigation so as to be able to give medical aid to the victim if an examination reveals that aid is necessary." *Id.* at 251. We explained that the offender's particular cruelty was "his indifference as to whether [the victim] was in fact injured and needed medical attention." *Id.*

This case is factually distinguishable from *Tucker* in that although Weaver knew that J.W. had been injured, he also concluded that she had died. The district court's findings indicate that Weaver concluded that J.W. had died shortly after she injured her head, and expert witness testimony indicates that this conclusion was reasonable. For example, Dr. Roe testified that after J.W. hit her head, her respi-

ratory and cardiovascular functions would have diminished until they ceased. And when defense counsel asked, "were somebody to say that she appeared to be dead, you couldn't contradict that, could you," Dr. Roe answered, "no." Dr. Roe testified, "I'm not saying that ... Weaver could not have thought that she might have been dead."

The question of whether failure to render aid is a permissible departure reason in an unintentional homicide case in which the offender believed that the victim was dead is one of first impression. *Cf. State v. Robideau,* 783 N.W.2d 390, 403 (Minn. App.2010) (holding that failure to render aid cannot be an aggravating factor in an intentional homicide), *rev'd on other grounds,* 796 N.W.2d 147 (Minn.2011). The state asserts that we should answer this question in the affirmative because an offender should not be permitted to determine that aid to a victim is unnecessary. We decline to decide this issue because even if we assume, for purpose of this opinion, that failure to render aid was an improper departure reason on these unique facts, there are other, proper reasons for departure in this case.

*Attempt to Burn J.W.'s Body*

█ In addition to identifying Weaver's failure to render aid as a reason for departure, the district court identified Weaver's attempt to burn J.W.'s body. This court has upheld upward sentencing departures where a defendant, believing the victim of his crime to be dead, attempted to burn the victim's body. In *State v. Dircks,* the defendant slashed his girlfriend's throat, hit her with a baseball bat, and, believing she was dead, placed a sleeping bag and mattress over her and set the mattress on fire. 412 N.W.2d 765, 767 (Minn.App. 1987), *review denied* (Minn. Nov. 24, 1987). As is the case here, medical evidence showed that the victim was alive during

the fire. *Id.* This court affirmed the district court's upward sentencing departure on defendant's second-degree murder conviction, stating that the defendant's conduct in setting fire to the victim's body when the medical evidence showed she was still breathing constituted an "unusually compelling" fact justifying the departure. *Id.* at 768. And in *State v. Gurske,* this court upheld an upward sentencing departure on a second-degree murder conviction where the defendant, thinking his wife whom he had stabbed was dead, poured accelerant on her face and ignited a fire. 424 N.W.2d 300, 301–05 (Minn.App.1988). In *Gurske,* the medical evidence suggested that the victim was alive when defendant started the fire. *Id.* at 302. This court stated that "[t]he fire and resulting mutilation of the body was an aggravating factor, particularly given the expert testimony that the victim could have been alive when the fire was started." *Id.* at 305.

Although the district court here found that there was insufficient proof that Weaver ignited J.W.'s body directly, it found that he intended to burn her body. And the district court's findings regarding J.W.'s burn injuries show that Weaver succeeded to some degree. *Dircks* and *Gurske* provide support for the district court's decision to depart based, in part, on Weaver's attempt to burn J.W.'s body. But Weaver argues that his attempt to burn J.W.'s body is an impermissible departure ground because it constitutes the uncharged crime of concealment under Minn.Stat. § 609.502, subd. 1 (1998) ("Whoever interferes with the body or scene of death with intent to mislead the coroner or conceal evidence is guilty of a gross misdemeanor.").

█ When determining whether a departure reason is valid, we must keep in mind certain restrictions.

Among the boundaries identified for proper departure is that the reasons used for departing must not themselves be elements of the underlying crime. Departures cannot be based on uncharged or dismissed offenses. Departures cannot be based on conduct underlying an offense of which the defendant was acquitted. And conduct underlying one conviction cannot be relied on to support departure on a sentence for a separate conviction.

*State v. Jones,* 745 N.W.2d 845, 849 (Minn. 2008) (quotations and citations omitted).

Notwithstanding these restrictions, there are circumstances in which departures may be based on conduct that constitutes an uncharged offense or that underlies another conviction. In discussing the "limitations on redundant enhancements," the *Jones* court relied, in part, on Minn. Stat. § 609.035 (2006). *Id.* at 850; *State v. Jackson,* 749 N.W.2d 353, 357–58 (Minn. 2008) (noting that a departure cannot be based on uncharged criminal conduct and that section 609.035 prohibits cumulative punishment for conduct that constitutes more than one offense). Section 609.035 provides that "if a person's conduct constitutes more than one offense under the laws of this state, the person may be punished for only one of the offenses." Minn. Stat. § 609.035, subd. 1 (Supp.1999).

But the legislature has authorized cumulative punishment for certain enumerated crimes. *Id.,* subds. 3–5 (2008 & Supp. 2009). These crimes include, generally, firearm offenses, fleeing a police officer, and arson. *Id.*[3] And these statutory exceptions to the prohibition against cumulative punishment "reflect legislative determinations concerning specific conduct that is eligible for increased punishment even

when committed as part of the same behavioral incident." *Jones,* 745 N.W.2d at 850. This court has relied on these exceptions to uphold departures based on uncharged criminal conduct and conduct that underlies another conviction. *See State v. Yaritz,* 791 N.W.2d 138, 141 (Minn.App. 2010) (concluding that the district court was permitted to consider defendant's use of chloroform on the victim as an aggravating factor, notwithstanding the fact that the use of chloroform constituted an uncharged offense), *review denied* (Minn. Feb. 23, 2011); *Grampre,* 766 N.W.2d at 352 (concluding that the district court was permitted to consider defendant's use of a knife as evidence of particular cruelty that supported an upward sentencing departure on his conviction for criminal sexual conduct, notwithstanding the fact that the use of the knife also supported his conviction of second-degree assault).

■ If a defendant commits an offense that is an identified exception to the prohibition against cumulative punishment under section 609.035, "he or she may be convicted and sentenced for other offenses that arise out of the same behavioral incident." *State v. Williams,* 771 N.W.2d 514, 520 (Minn.2009). First-degree arson is one such exception. "[A] prosecution for or conviction of a violation of section[ ] 609.561 [ (first-degree arson) ] . . . is not a bar to conviction of or punishment for any other crime committed by the defendant as part of the same conduct when the defendant is shown to have violated section[ ] 609.561 . . . for the purpose of concealing any other crime." Minn.Stat. § 609.035, subd. 4 (1998).

Weaver was prosecuted for a violation of section Minn.Stat. § 609.561 (1998 & Supp.

---

**3.** The legislature has since amended the statute to include criminal sexual conduct. 2000

Minn. Laws ch. 311, art. 4, § 1, at 211.

2009) (defining first-degree arson): his conviction and sentence for felony-murder are based on the predicate offense of first-degree arson. Moreover, the district court found that "[Weaver] knew that he had caused the death of his wife, and had done something wrong. [Weaver's] intent was to burn the house, the entire structure and everything in it. Including the body of [J.W.]" In explaining its departure reasons, the district court stated that Weaver started the fire "in an effort to destroy evidence, the home[,] and the body of [J.W.]." Because this record establishes that Weaver committed the arson for the purpose of concealing another crime, cumulative punishment for "any other crime committed by the defendant as part of the same conduct" is therefore permitted, including the crime of concealment. *See* Minn.Stat. § 609.035, subd. 4. And because Weaver's conduct falls within the exception to the statutory prohibition against cumulative punishment, the prohibition against using uncharged criminal conduct as a basis for an upward sentencing departure is inapplicable. *See Yaritz,* 791 N.W.2d at 141.

■ Weaver also argues that his attempt to burn J.W.'s body is an impermissible departure ground because it constitutes an element of the conviction offense. This argument also fails. First, the departure was based on the finding that Weaver ignited a fire to destroy J.W.'s body, not merely on the fact that he ignited the fire. Igniting a fire to destroy the body of an apparent murder victim is not an element of felony murder with first-degree arson as the predicate offense. *See* Minn.Stat. § 609.19, subd. 2(1) (providing that whoever unintentionally causes the death of a human being while committing or attempting to commit a felony offense is guilty of second-degree murder); Minn.Stat. § 609.561, subd. 1 (providing that anyone

who unlawfully and by means of fire intentionally damages or destroys any building that is used as a dwelling at the time the act is committed commits first-degree arson, "whether the inhabitant is present therein at the time of the act or not"). Moreover, Weaver could have been convicted and punished for first-degree arson in addition to the felony murder. *See* Minn.Stat. § 609.035, subd. 4. Because cumulative punishment for the first-degree arson and felony murder is permissible, Weaver's attempt to burn J.W.'s body is a valid departure ground, even though this conduct encompasses an element of the charged offense (i.e., fire setting) and would otherwise constitute an impermissible "redundant enhancement." *See Jones,* 745 N.W.2d at 850 (recognizing exceptions to the statutory prohibition of cumulative punishment).

■ In summary, Weaver's attempt to burn J.W.'s body is a valid departure reason. "The presence of a single aggravating factor is sufficient to uphold an upward departure." *State v. Mohamed,* 779 N.W.2d 93, 97 (Minn.App.2010), *review denied* (Minn. May 18, 2010). But the district court's findings establish another valid departure reason that was not identified by the district court: Weaver's infliction of multiple injuries through different means. We discuss this departure reason next.

*Multiple Injuries*

■ This court has held that a defendant's multiple attacks on a single victim with different deadly instruments is a valid departure reason, stating that "[t]he manner of use of a single deadly weapon, or two similar instruments, has been held sufficient to establish particular cruelty and to justify a double or less-than-double departure." *Dircks,* 412 N.W.2d at 768; *see also State v. Kisch,* 346 N.W.2d 130, 133 (Minn.1984) (upholding a departure

where the murder was "not just an unintentional killing resulting from a single blow but was one resulting from multiple brutal blows").

In this case, J.W. suffered multiple injuries, which were inflicted by two different methods. Weaver first assaulted J.W., causing her to fall, strike her head, and sustain severe head trauma.[4] Weaver next ignited a fire, causing J.W. to incur multiple burn injuries: plastic from a light fixture melted onto J.W.'s body and some areas of her skin were completely burned away. Weaver's infliction of multiple injuries through two different means is an additional, permissible departure reason.

At oral argument, Weaver asserted that although there may be multiple, valid reasons for a departure in this case, this court's review is restricted to the district court's stated reasons. Caselaw refutes this assertion. Historically, if the reasons given for departure were improper or inadequate, but there was sufficient evidence in the record to justify departure, the departure would be affirmed. *Williams v. State*, 361 N.W.2d 840, 844 (Minn.1985). The supreme court has since explained:

> After *Blakely* [*v. Washington*, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004) ], we no longer independently review the record for evidence to justify a departure because the issue of whether additional facts exist to support the departure is a question of fact for a *Blakely* jury, unless the defendant has waived his or her right to a *Blakely* jury. Instead, when the facts found only support an improper or inadequate

reason for departure, we have generally remanded for further proceedings.

*State v. Stanke*, 764 N.W.2d 824, 828 (Minn.2009) (citation omitted).

*Stanke* suggests that where, as here, the defendant has waived his right to a *Blakely* jury and the "facts found" by the district court show a valid reason for departure, remand for further proceedings may be unnecessary. *See id.* The Minnesota Supreme Court's holding in *State v. Rourke*, 773 N.W.2d 913 (Minn.2009), supports this conclusion. The supreme court explained:

> Although the rule announced in *Blakely* now requires that the facts of the case be found by a jury, it does not require us to abandon our view that [an aggravating factor] is a reason explaining why the *facts* of the case provide the district court a substantial and compelling basis for imposition of a sentence outside the range on the grid. We hold that a district court must submit to a jury the question of whether the State has proven beyond a reasonable doubt the existence of additional facts, which were neither admitted by the defendant, nor necessary to prove the elements of the offense, but which support reasons for departure. But the question of whether those additional facts provide the district court a reason to depart does not involve a factual determination and, therefore, need not be submitted to a jury.

*Rourke*, 773 N.W.2d at 920–21 (alteration in original) (footnotes omitted).

Under the reasoning of *Rourke* and *Stanke*, when the district court's stated

---

**4.** Because section 609.035, subd. 4, allows multiple convictions and punishments for "any other crime committed by the defendant as part of the same conduct" when the defendant is shown to have violated section 609.561 for the purpose of concealing a

crime, the assault and the associated injuries are permissible departure reasons notwithstanding the fact that these facts also supported Weaver's second felony-murder conviction. *See Grampre*, 766 N.W.2d at 352.

departure reasons are improper or inadequate, an appellate court may independently examine the record to determine if there is sufficient evidence to justify departure, so long as the court does not engage in impermissible fact-finding.

Weaver waived his right to a jury trial on the facts that would support a departure and agreed to a trial before the district court. The district court held a trial and made detailed findings of fact. Our independent examination of the district court's findings reveals that Weaver inflicted multiple injuries on J.W. through two different means. This conduct provides a valid departure reason. Having determined that the record establishes two permissible departure reasons—Weaver's attempt to burn J.W.'s body and his infliction of multiple injuries—we next consider whether a 75-month upward departure would have been within the district court's discretion based solely on these reasons.

*Abuse of Discretion*

 Generally, "in a case in which an upward departure in sentence length is justified, the upper limit will be double the presumptive sentence length." *State v. Evans*, 311 N.W.2d 481, 483 (Minn.1981). "The general issue that faces a [district] court in deciding whether to depart durationally is whether the defendant's conduct was significantly more or less serious than that typically involved in the commission of the crime in question." *State v. Back*, 341 N.W.2d 273, 276 (Minn.1983). The evidence should "support the conclusion that the defendant committed, in a particularly serious way, the offense with which he is being sentenced." *Id.* "[I]t is proper for the sentencing court to consider the course of conduct underlying the charge for which the defendant is being sentenced." *Id.*

"If there is such a thing as a typical felony-murder, it probably is an unintentional killing that occurs in the course of

robbery or some other crime against the person." *Id.* at 276–77. For example, in *Back*, the defendants went on a "shooting spree" with a rifle and fired approximately 30 shots at a number of buildings, including a school and two houses. *Id.* at 277. One of the bullets struck and killed a random woman, who was on the front porch of her own home. *Id.* at 274. The defendants were convicted of felony murder. *Id.* One of the defendants received an upward durational departure, which the supreme court affirmed, reasoning that the felony murder was committed in a particularly serious way. *Id.* at 275, 277–78. The supreme court rejected the defendant's argument that the fact that the victim was shot in her home was an invalid departure reason "because firing the shots at a house was what made defendant's conduct constitute murder." *Id.* at 277. The court reasoned that the fact that the defendant shot at a house is not what made his conduct felony murder: "If he had killed someone while shooting at a street sign his conduct still would have been felony murder." *Id.* The court explained it was "a matter of degree." *Id.*

Here too, it is a matter of degree. If the course of criminal conduct underlying Weaver's conviction had ended with his assault on J.W. and J.W. had died from her head injuries, the instant offense would appropriately be described as a "typical" felony murder. But Weaver's course of criminal conduct was much broader. Believing that he had caused J.W.'s death, Weaver ignited a fire to conceal his crime. He attempted to burn J.W.'s body and inflicted burn injuries to J.W. in the process. These facts distinguish this case from a "typical" felony murder.

In the final analysis, an appellate court's decision whether a particular durational departure is justified "must be based on

[its] collective, collegial experience in reviewing a large number of criminal appeals from all the judicial districts." *State v. Norton*, 328 N.W.2d 142, 146–47 (Minn. 1982). Because Weaver's attempt to burn J.W.'s body and his infliction of multiple injuries through two different means is conduct significantly more serious than that typically involved in the commission of felony murder, the 75–month upward departure is not an abuse of discretion.

*Necessity of Remand*

Notwithstanding our determinations that the record establishes two valid departure reasons and that the departure was within the district court's discretion, we last consider whether remand is necessary because the district court based the departure, in part, on Weaver's failure to render aid. "[W]hen a reviewing court concludes that a district court based a departure on both valid and invalid factors, a remand is required unless it determines the district court would have imposed the same sentence absent reliance on the invalid factors." *State v. Vance*, 765 N.W.2d 390, 395 (Minn.2009) (quotation omitted).

In deciding whether to affirm or remand, we must determine whether the district court would have imposed the same sentence absent reliance upon the improper aggravating factor. In doing so, we consider the weight given to the invalid factor and whether any remaining factors found by the court independently justify the departure. Only if we conclude that the district court would have imposed the same sentence absent the improper aggravating factor will we affirm the sentence imposed by the court.

*Stanke*, 764 N.W.2d at 828, 829 (affirming a greater-than-double durational departure after concluding that absence of an improperly-relied-on factor would not change the district court's sentence on remand).

At oral argument, the state indicated that if this court finds that the district court improperly relied on Weaver's failure to render aid, we must remand for resentencing. The state reasons that remand is necessary because the district court did not make an express statement regarding the relative weight of each of its stated departure reasons. We disagree. Although an express statement by the district court regarding the relative strengths of its stated departure grounds may be dispositive, *see State v. Robideau*, 783 N.W.2d 390, 404 (Minn.App.2010) (stating, "It is clear to us that the district court would have departed based on the presence-of-a-child finding alone because the sentencing order declares that [the child's] 'presence at the time of the homicide is a sufficient ground for departure standing alone' "), *rev'd on other grounds*, 796 N.W.2d 147 (Minn.2011), the absence of such a statement does not require remand where other circumstances support a conclusion that the district court would have imposed the same sentence absent reliance on an invalid factor.[5]

For example, in *Vance*, the supreme court determined that one of the district court's three stated departure grounds was invalid because it was based on a jury finding that was affected by an erroneous jury instruction. 765 N.W.2d at 394–95. The state asked the supreme court to nonetheless affirm the sentence because two of the stated departure reasons remained. *Id.* at 395. The *Vance* opinion does not reference any statement by the

---

5. Obviously, remand is less likely to be necessary where the district court expressly states the relative weight of multiple departure reasons. We therefore encourage the district court to use this approach.

district court regarding the relevant strengths of its stated departure grounds. Yet the *Vance* court affirmed the sentence, reasoning that the sentence was consistent with precedent and that when the remaining factors are valid and independently support the departure, "it is reasonable to conclude that the district court would have imposed the same sentence absent reliance on the [improper factor]." *Id.* at 395–96.

We similarly conclude that the district court here would have imposed the same sentence absent reliance on the failure-to-render-aid factor. As discussed earlier, the sentence is consistent with precedent and valid reasons independently support the departure. Moreover, the district court originally imposed a 150–month upward departure. On remand, the district court imposed a 75–month upward departure. These sentences indicate that the district court has consistently viewed Weaver's offense as significantly more serious than a typical felony murder. Under these circumstances, it is reasonable to conclude that the district court would have imposed the same sentence absent reliance on the failure-to-render-aid factor. Remand is therefore unnecessary.

## II.

We next address Weaver's claim that the district court abused its discretion in denying his request for a downward-durational departure.

■■■■ The district court has broad discretion to depart where compelling circumstances exist, and an appellate court generally will not interfere. *State v. Kindem,* 313 N.W.2d 6, 7 (Minn.1981). "[I]t would be a rare case which would warrant reversal of the refusal to depart." *Id.* But in exercising its sentencing discretion, the district court "must consider circumstances supporting a downward durational departure from the presumptive sentence."

*State v. Curtiss,* 353 N.W.2d 262, 262, 263 (Minn.App.1984) (remanding for reconsideration of defendant's request for downward departure where the district court erred in failing to consider "legitimate" and "significant" reasons for departure).

■■■ Weaver argues that there is a valid reason for a downward departure in this case: the presumptive guidelines sentence of 150 months was legislatively increased from the previous presumptive sentence of 105 months based on "political pressure as opposed to empirical research." *See* 1989 Minn. Laws. ch. 290, art. 2, § 17, at 1594–95 (increasing penalties at the IX and X severity levels). Weaver relies on *Kimbrough v. United States,* in which the United States Supreme Court held that

> under [*United States v. Booker,* 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005) ] the cocaine Guidelines, like all other Guidelines, are advisory only ... A district judge must include the Guidelines range in the array of factors warranting consideration. The judge may determine, however, that, in the particular case, a within-Guidelines sentence is "greater than necessary" to serve the objectives of sentencing.

552 U.S. 85, 91, 128 S.Ct. 558, 564, 169 L.Ed.2d 481 (2007).

Weaver argues that "[d]isagreement with how a particular federal guideline was formulated and for what reasons are now recognized avenues for departure downward." The state counters that federal caselaw interpreting the federal sentencing guidelines is inapposite because the federal sentencing guidelines are advisory, whereas the Minnesota guidelines are mandatory. *See Booker,* 543 U.S. at 245, 125 S.Ct. at 757 (instructing federal district courts to read the United States Sentencing Guidelines as "effectively advisory"); *State v. Shattuck,* 704 N.W.2d 131, 146–47 (Minn.

2005) (declining to modify the Minnesota Sentencing Guidelines to make them advisory, as the United States Supreme Court had done with the federal sentencing guidelines, because of important differences between the Minnesota and federal systems).

Although Weaver's argument finds support in federal caselaw, it is at odds with Minnesota precedent. "Determination of what conduct constitutes a criminal offense and the punishment that ought to be imposed (including the terms and conditions of probation, confinement, and parole) is peculiarly a legislative and not a judicial function." *State ex rel. Ahern v. Young,* 273 Minn. 240, 243, 141 N.W.2d 15, 17 (1966). "[T]he legislature, having the power to define what acts constitute criminal conduct, necessarily retains the power to define the punishment for such acts." *State v. Osterloh,* 275 N.W.2d 578, 580 (Minn.1978); *see also Back,* 341 N.W.2d at 276 (stating that "whether or not felony-murder should be classified as second-degree murder or third-degree murder is a legislative decision").

Moreover, "[t]he role of the trial judge in prescribing sentence in a criminal case is that of the executor of the legislative power." *Osterloh,* 275 N.W.2d at 580. District courts are required to impose the presumptive sentence absent a finding of aggravating or mitigating circumstances. *Shattuck,* 704 N.W.2d at 140–41. "General disagreement with the Guidelines or the legislative policy on which the Guidelines are based does not justify departure." *State v. Bellanger,* 304 N.W.2d 282, 283 (Minn.1981). For all of these reasons, Weaver's argument that a district court may depart from the guidelines based on its disagreement with how a particular sentencing guideline was formulated is unavailing.

Weaver also argues that the district court did not give his departure request appropriate consideration, asserting that if the district court had considered the United States Supreme Court's "rejection of politically increased sentences" as a ground for downward departure, it would have determined that "the first guideline justified a beginning guideline of a 105 month sentence." This argument is not persuasive. First, the record refutes Weaver's assertion that the district court did not consider his argument. At the sentencing hearing, the district court noted that it had received departure motions from both parties and heard oral arguments on the respective departure motions. Second, although this court held, in *Curtiss,* that the district court erred in failing to deliberately consider factors for departure, we described the departure grounds as "legitimate" and "significant." 353 N.W.2d at 263–64. The same cannot be said of Weaver's proffered departure ground, which is contrary to Minnesota law.

## DECISION

Weaver's attempt to burn J.W.'s body and his infliction of multiple injuries through different means are valid reasons for the upward-durational departure in this case. Because this conduct is significantly more serious than that typically involved in a felony murder, the district court's imposition of a 75–month upward departure is not an abuse of discretion. Moreover, because disagreement with the presumptive guidelines sentence, or the policy reasons that support it, is not a recognized basis for departure, the district court did not abuse its discretion in refusing to depart downward on this ground.

**Affirmed.**

MINGE, Judge (concurring in part and dissenting in part).

I join in affirming the conviction, but I dissent from our affirmance of the upward departure in the sentence and would remand for resentencing.

At the outset, I emphasize that I deplore the criminal conduct of appellant Gordon Douglas Weaver in murdering his wife. Her tragic and horrific death stunned family, friends, and the broader community. Appellant's dissembling, absconding, and living as a fugitive with a fictitious identity prolonged the prosecution by years. Unfortunately, these criminal proceedings have been protracted. However, we are a society governed by law and must follow the proper process in dealing with miscreants.

Here, the district court found that Weaver believed that his wife had died as a result of her fall and that she was dead when he started the fire. The majority acknowledges the awkward and illogical analysis required to conclude both that Weaver believed that his wife had died as a result of the fall and that his failure to obtain medical assistance constituted particular cruelty. However, from the transcript of the sentencing proceedings, it is clear that the district court viewed this form of cruelty as the primary basis for the upward sentencing departure after both the first and second trials. The majority assumes that this finding of particular cruelty for failure to obtain assistance was error and affirms. I agree with this assumption but conclude that we should remand.

After determining that failure to obtain medical assistance was a substantial and compelling circumstance, the district court, almost as an afterthought, added that Weaver "callously poured accelerant throughout the laundry room and started a fire in an effort to destroy evidence, the

home and the body of [J.W.]." It is unclear whether the district court thought that this too was a compelling aggravating circumstance, or what, if any, greater sentence the district court would have imposed on this factor alone. We are left to speculate about these questions.

The district court also did not consider whether the infliction of multiple fire-related injuries on the unconscious victim constituted a substantial, compelling, and aggravating circumstance, or whether it would support an upward departure from the presumptive sentence, or how great a sentencing departure it would support.

Our caselaw does not recognize an expansive role for the court of appeals in determining what the district court would consider an adequate basis for an upward departure and what that departure should be. I submit that we should have a clear and convincing basis for that determination. In *State v. Vance*, where a sentence was allowed to stand after appellate review, the district court had found three grounds for an upward departure, and on appeal, two of the three bases were upheld. 765 N.W.2d 390, 395–96 (Minn. 2009). It is hard for us to divine what a district court judge, faithfully applying the proper law, after a reversal, will conclude is the proper upward departure. We certainly must assume the district court will limit its consideration to proper factors and properly exercise its discretion based on identified factors.

Another dimension of finding that Weaver's arson-related conduct is a proper basis for an upward-departure factor is the length of the departure. I recognize that if Weaver had been so prosecuted, he could have been convicted of arson as a separate offense and that a concurrent sentence could have been imposed. However, the presumptive sentence for that

offense is 48 months. Minn. Sent. Guidelines IV–V (2006). It is dramatic to have a 75–month upward departure for a separate offense that presumptively would have a nearly 40% lesser sentence. Although a 75–month arson sentence is possible, I submit that it is beyond the appropriate role of this court to make that decision. This is the province of the district court. Our proper role is to review that decision.

It is significant that the state recommended to this court at oral argument that if we concluded that failure to seek medical assistance did not constitute a valid ground for an upward departure, we should remand for the district court to evaluate the record, determine whether aggravating circumstances were present, and determine the departure warranted. I would accept the state's recommendation and remand, giving the parties an opportunity for briefing and argument.