STATE of Minnesota, Respondent,

v.

Elton Perez VANCE, Appellant.

No. A06–2130.

Supreme Court of Minnesota.

May 21, 2009.

Lawrence Hammerling, Chief Appellate Public Defender, Rochelle R. Winn, Assistant Public Defender, Saint Paul, MN, for appellant.

Lori Swanson, Attorney General, Saint Paul, MN, James C. Backstrom, Dakota County Attorney, Helen R. Brosnahan, Assistant County Attorney, Hastings, MN, for respondent.

## OPINION

MEYER, Justice.

At appellant Elton Perez Vance's *Blakely* trial, the jury found the existence of three aggravating factors: (1) multiple forms of penetration; (2) the presence of children; and (3) particular cruelty. The issue in this case is whether at the *Blakely* trial the district court's jury instruction materially misstated the law regarding the presence-of-children sentencing factor. We conclude that the instruction was erroneous, but we affirm the sentence.

On April 28, 2003, a jury found Vance guilty on three counts of first-degree criminal sexual conduct, one count of third-degree criminal sexual conduct, and one count of second-degree assault. The district court sentenced Vance to 288 months' imprisonment for first-degree criminal sexual conduct, a double upward durational departure from the presumptive 144–month sentence, and to a 21–month con-

current sentence for second-degree assault. The court imposed the double upward departure on finding that Vance: (1) held the victim captive for a significant amount of time; (2) treated the victim with particular cruelty; (3) committed multiple forms of penetration; (4) violated the victim's zone of privacy; and (5) committed the offense in the presence of children. The court of appeals upheld Vance's convictions, but remanded the case for resentencing in light of *Blakely v. Washington,* 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004). *State v. Vance,* 685 N.W.2d 713 (Minn.App.2004), *rev. denied* (Minn. Nov. 23, 2004).

At the *Blakely* trial, the State presented the following evidence. On February 2, 2003, the mother of Vance's children, A.S.T., reported that for nearly ten hours Vance had repeatedly forced her to have oral and vaginal sex, burned her with cigarettes, cut off her hair with a knife, choked and strangled her, punched and kicked her, and urinated on her. A.S.T. told a 911 operator that she had escaped to a neighbor's apartment with her three-year-old child, but that her other child was still in A.S.T.'s apartment with Vance. When law enforcement officers and emergency medical personnel responded to the 911 call, they observed that A.S.T. had swollen lips, black-and-blue eyes, facial swelling, bruising and abrasions on her neck, six cigarette burns on her body, and her shirt was wet with urine. The officers arrested Vance after they entered A.S.T.'s apartment and discovered Vance asleep on a mattress with a child lying near him.

A.S.T. told the officers that she had initially resisted Vance, but that she stopped after he beat her even more severely for fighting back. A.S.T. also told the officers that the children were kept separate from her and Vance. She said that she moved the children from the living room to the bedroom and from the bedroom to the living room, depending upon where Vance had her in the apartment. A.S.T. told the officers that she had to wait for an opportunity to escape and call for help. She was surprised that the police had not come earlier because of the noise created during the violent assault.

A.S.T. testified on behalf of Vance, claiming that she could not recall many of the details from the incident. She testified that she and Vance "briefly" got into a fight, which she believed her children did not see or hear because they were in their bedrooms. However, A.S.T. did admit that she had told the police that Vance had inflicted her injuries.

Three aggravating factors were submitted to the jury: (1) multiple forms of penetration; (2) the presence of children; and (3) particular cruelty. Both parties submitted proposed jury instructions on the presence-of-children and particular-cruelty aggravating sentencing factors.[1] The parties and district court discussed these instructions at length. Defense counsel objected to the court's presence-of-children instruction, which included the sentence, "[t]he State need not prove that the child or children actually observed or heard the offense or offenses, so long as they could have, from where they were located." Defense counsel argued that the court's instruction was too broad because it made every domestic assault case in which the couple had children an aggravated case. The court overruled Vance's objection to the presence-of-children instruction.

---

1. Whether the court properly instructed the jury on the particular-cruelty factor is not an issue on appeal to this court.

The jury found that the State had proven beyond a reasonable doubt that Vance had engaged in multiple forms of penetration and that he had committed the crimes "within sight or sound of a child or children" and with "particular cruelty." Based on the jury's findings, the district court imposed a 288–month executed sentence for Vance's first-degree criminal sexual conduct conviction, which was a double upward durational departure from the presumptive 144–month sentence.

On appeal to the court of appeals, Vance argued that the district court abused its discretion when it allowed the paramedic to testify that the incident was horrific, and that the district court's jury instructions regarding the presence-of-children and particular-cruelty factors materially misstated the law. The court of appeals affirmed. *State v. Vance*, No. A06–2130, 2008 WL 942553, at *7 (Minn.App. Apr.8, 2008).

■■■ We accepted review on the question of whether the district court erred in giving the presence-of-children jury instruction and, if so, whether the case should be remanded for resentencing. District courts are allowed considerable latitude in the drafting of language for jury instructions. *State v. Mahkuk*, 736 N.W.2d 675, 681–82 (Minn.2007). We review jury instructions "in their entirety to determine whether they fairly and adequately explained the law of the case." *State v. Flores*, 418 N.W.2d 150, 155 (Minn.1988). A jury instruction is in error if it materially misstates the law. *State v. Moore*, 699 N.W.2d 733, 736 (Minn.2005).

■■ The Minnesota Sentencing Guidelines provide a "nonexclusive list of factors" that justify an aggravated departure from a presumptive sentence. Minn. Sent. Guidelines II.D.2. In exercising the discretion to upwardly depart, the court must state "the particular substantial and compelling circumstances that make the departure more appropriate than the presumptive sentence." Minn. Sent. Guidelines II.D. "Substantial and compelling circumstances are those demonstrating that 'the defendant's conduct in the offense of conviction was *significantly* more or less serious than that typically involved in the commission of the crime in question.'" *State v. Jones*, 745 N.W.2d 845, 848 (Minn.2008) (quoting *State v. Misquadace*, 644 N.W.2d 65, 69 (Minn.2002)).

We have recognized that the presence of children is an aggravating sentencing factor when the offense is committed in the actual presence of children. *State v. Profit*, 323 N.W.2d 34, 36 (Minn.1982). In *Profit*, we agreed with the district court's assessment that committing criminal sexual conduct in front of children was a particularly outrageous act and that, while children might not technically be victims of the crime, they were victims in another sense. *Id.*

We have also suggested that the presence of children may be an aggravating factor when the victim is particularly vulnerable due to a child's presence in the home. *State v. Johnson*, 450 N.W.2d 134, 135 (Minn.1990) (concluding that a double durational departure was justified by a number of factors, including that the 14–year–old sexual assault victim was particularly vulnerable due to the fact that she was babysitting two infants and "she was not free to try to flee because she had a responsibility to the infants who were present"); *see also State v. Hart*, 477 N.W.2d 732, 740 (Minn.App.1991) (affirming an upward sentencing departure when the fact that the victim's children were asleep in the next room increased the victim's vulnerability and compromised the victim's ability to escape), *rev. denied* (Minn. Jan. 16, 1992).

■ Vance challenges the district court's instruction to the jury on the presence-of-children aggravating factor, which read:

The State need not prove that the child or children actually observed or heard the offense or offenses, so long as they could have, from where they were located. Furthermore, a child in an adjoining room could be considered to be within sight or sound of the offense if the defendant knew the child was there, and the victim was less inclined to flee because she did not want to abandon the child.

Vance argues that this instruction materially misstated the law because it allowed the jury to find the existence of the presence-of-children aggravating factor even if the jury concluded that (1) the children did not actually observe or hear the offense, and (2) the victim was not particularly vulnerable due to a child's presence. He argues that the erroneous instruction had a significant impact on the jury's findings because it relieved the State of its burden of proving the recognized presence-of-children aggravating factor and instead simply required the State to prove that it was "possible" that the children saw or heard the offense.

■ We conclude that the district court's instruction to the jury materially misstated the law. The jury was asked whether the children were "within sight or sound of the offense." The court instructed the jurors that the State did not have to prove the children saw or heard the offense, as long as they *could* have. The mere presence of children in the home, absent any evidence that they saw or heard the offense, is not a substantial and

compelling circumstance demonstrating that a defendant's conduct was significantly more serious than that typically involved in the commission of the offense.[2] A proper instruction would indicate that the State had to prove that the children saw, heard, or otherwise witnessed the offense to support a finding that the offense was committed in the presence of children. As we explained in *Profit*, it is particularly outrageous to commit a sexual assault in the actual presence of children because it victimizes children in a broad sense. 323 N.W.2d at 36.

■ We next consider whether the erroneous jury instruction was harmless. "An erroneous jury instruction does not require a new trial if the error was harmless beyond a reasonable doubt." *Mahkuk*, 736 N.W.2d at 683. After *Blakely*, Minnesota adopted a two-part sentencing rule that applies unless a sentencing jury is waived. First, the jury is required to find facts that support a departure from the sentencing guidelines. Minn. Sent. Guidelines II.D. Second, after the jury makes its findings, the court may exercise discretion and depart from the presumptive sentence. *Id.* As a result, our harmless error analysis of erroneous jury instructions given at a *Blakely* trial requires us to (1) determine if the error affected the jury's answer to the special interrogatory and, (2) if so, whether absent the jury's answer to the special interrogatory, the court would have imposed the same sentence.

■ The State argues that even if the first sentence of the instruction was in error, the jury's findings should be upheld as the second part of the instruction gave

---

2. In any event, there was no evidence that the children in this case saw or heard the offense. A.S.T. told investigators that she kept the children occupied in other rooms during the inci-

dent. At the *Blakely* trial, she testified that she did not believe the children saw or heard the fight.

the jury an alternative basis for concluding that the offense occurred in the presence of children. The second part of the instruction states that if a child is in an adjoining room, a child could be considered to be "within sight or sound of the offense" if the victim "was less inclined to flee because she did not want to abandon the child." The State argues that the jury's finding can be explained on the basis of this alternative theory; i.e., if the children were not witnesses to the offense, the victim was more vulnerable because she did not want to abandon the children. *See Johnson,* 450 N.W.2d at 135. The State, citing our decision in *State v. Ihle,* reasons that "the jury need not always decide unanimously which of several possible means the defendant used to commit the offense in order to conclude that an element has been proved beyond a reasonable doubt." 640 N.W.2d 910, 918 (Minn.2002) (citing *Richardson v. United States,* 526 U.S. 813, 817–18, 119 S.Ct. 1707, 143 L.Ed.2d 985 (1999)).

The State's reliance on our reasoning in *Ihle* is misplaced. In *Ihle,* we upheld an instruction that allowed the jury to decide whether the defendant obstructed justice based on one or more of three alternative means. *Id.* at 919, 119 S.Ct. 1707. Each of the alternative means was a correct statement of the law and we did not require unanimity on the specific way in which the defendant had obstructed justice. *Id.* The circumstances in this case are very different. Here, one of the two alternative theories was an incorrect statement of the law. The jury's finding on the presence-of-children factor may have been based on either one of two alternative theories, one of which was an incorrect statement of the law. We cannot tell from the verdict if the jury relied on the incorrect theory. Therefore, we cannot conclude beyond a reasonable doubt that the improper

instruction did not have a significant impact on the verdict.

 The State asks that we affirm the sentence because two of the three aggravating factors considered by the resentencing court remain, particular cruelty and multiple forms of penetration, and that each independently provides a basis for a double upward durational departure. We review the resentencing court's decision to depart from the presumptive sentence under the Minnesota Sentencing Guidelines for an abuse of discretion. *State v. Losh,* 721 N.W.2d 886, 895 (Minn.2006). Reversal is warranted only if the reasons for the departure are improper or inadequate and there is insufficient evidence to justify an aggravated sentence for the offense of which the defendant was convicted. *Taylor v. State,* 670 N.W.2d 584, 588 (Minn. 2003).

 The United States Supreme Court has stated that "[w]hen a reviewing court concludes that a district court based a departure on both valid and invalid factors, a remand is required unless it determines the district court would have imposed the same sentence absent reliance on the invalid factors." *Koon v. United States,* 518 U.S. 81, 113, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996). Thus, in Vance's case, we consider whether the resentencing court would have imposed a double upward durational departure relying on the jury's findings that the offense was committed with particular cruelty and by multiple forms of penetration. We have previously concluded that a double upward durational departure is appropriate on finding particular cruelty alone. *State v. Martinez,* 319 N.W.2d 699, 701 (Minn.1982). When, as here, the remaining factors independently support a double upward departure, and when two out of three factors are valid, it is reasonable to conclude that the district court would have imposed the same sen-

tence absent reliance on the presence-of-children factor. Because the record contains sufficient evidence to justify the departure, we affirm Vance's sentence.

Affirmed.