*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A13-2234**

State of Minnesota,
Respondent,

vs.

Rafael Antonio Alfaro,
Appellant.

**Filed October 27, 2014
Affirmed
Schellhas, Judge**

Scott County District Court
File No. 70-CR-05-22828

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Patrick J. Ciliberto, Scott County Attorney, Todd P. Zettler, Assistant County Attorney, Shakopee, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Jennifer Workman Jesness, Assistant Public Defender, St. Paul, Minnesota (for appellant)

        Considered and decided by Schellhas, Presiding Judge; Worke, Judge; and Rodenberg, Judge.

## U N P U B L I S H E D   O P I N I O N

**SCHELLHAS**, Judge

        Appellant argues that the district court abused its discretion by accepting his guilty

plea to second-degree assault with a dangerous weapon because the aggravating factors

necessary to support his negotiated quadruple-upward-departure sentence are not supported by sufficient evidence. Appellant also makes pro se arguments. We affirm.

## FACTS

In October 2005, after appellant Rafael Alfaro's deportation on July 31, 2005, respondent State of Minnesota charged him with one count of first-degree criminal sexual conduct under Minn. Stat. § 609.342, subd. 1(c) (2004); two counts of second-degree assault with a dangerous weapon under Minn. Stat. § 609.222, subd. 1 (Supp. 2005); one count of domestic assault by strangulation under Minn. Stat. § 609.2247, subd. 2 (2004);[1] and one count of false imprisonment by intentional restraint under Minn. Stat. § 609.255, subd. 2 (2004). According to facts contained in the probable-cause section of the complaint, Alfaro held the victim, M.D., in her home for two days and sexually and physically assaulted her in the presence of her young children. Alfaro's conduct included penetrating M.D.'s rectum with a chair rung, forcing her to swallow pills, repeatedly striking her in the face with an eight-inch kitchen knife, and threatening to kill her and her children.

More than six years later, law enforcement authorities arrested Alfaro in Minnesota, and in July 2012, the district court held the first hearing on Alfaro's criminal charges in this case. On April 22, 2013, the state noticed its intent to seek "an aggravated

---

[1] Minnesota Statutes section 609.2247 does not apply to crimes committed before its effective date of August 1, 2005. *See* 2005 Minn. Laws ch. 136, art. 17, § 13, at 1130. Based on facts contained in the probable-cause section of the complaint, Alfaro's criminal conduct occurred on June 11–12, 2005. Because the charge of domestic assault by strangulation was ultimately dismissed, however, we need not address the retroactive application of Minn. Stat. § 609.2247.

2

durational departure up to the statutory maximum sentence of 30 years (360 months)" supported by the aggravating factors of particular cruelty, presence of children, zone of privacy, and position of trust.

On April 24, 2013, Alfaro pleaded guilty to one count of second-degree assault with a dangerous weapon in exchange for dismissal of all other charges. He waived his *Blakely* rights and agreed to an 84-month sentence—a quadruple upward durational departure—based on the existence of aggravating factors. The district court accepted Alfaro's guilty plea, set a sentencing hearing, and directed the state to draft a memorandum outlining the aggravating factors noted by the court and "others that [it] deem[ed] appropriate." Six days later, Alfaro submitted a one-page, handwritten letter to the court, requesting permission to withdraw his plea. In June, he formally moved to withdraw his plea. Noting that Alfaro contended only that his plea was involuntary, the district court denied Alfaro's motion.

Based on the aggravating factors of presence of children, particular cruelty, particular vulnerability, zone of privacy, and crime more onerous than the usual offense, and noting that a sentence greater than double the presumptive sentence "is justified when facts are unusually compelling," the district court sentenced Alfaro to 84 months' imprisonment.

This appeal follows.

**D E C I S I O N**

Alfaro does not challenge the sufficiency of the factual basis for his guilty plea to second-degree assault with a dangerous weapon. Nor does he challenge the validity of his *Blakely* waiver. *See State v. Thompson*, 720 N.W.2d 820, 827 (Minn. 2006) (permitting waiver of the right to a jury determination of aggravating sentencing factors as long as waiver is made knowingly, voluntarily, and intelligently). Alfaro argues that the factual basis offered at his plea hearing is insufficient to support the aggravating factors upon which the district court relied in imposing the quadruple-upward-departure sentence of 84 months. He requests three alternative forms of relief: reversal of his conviction and sentence, reversal of his sentence and remand for imposition of the presumptive 21-month sentence, or reversal of his sentence and remand for further findings by the district court "to determine what facts the court relied upon to impose the quadruple upward departure sentence."

"[N]egotiated plea agreements that include a sentencing departure are justified under the guidelines in cases where substantial and compelling circumstances exist." *State v. Misquadace*, 644 N.W.2d 65, 71 (Minn. 2002). "A plea agreement standing alone, however, does not create such circumstances in its own right. Rather, when reviewing a plea agreement that includes a sentencing departure, the court must determine whether the offense of conviction reflects any aggravating or mitigating circumstances that warrant a departure." *Id.*

"Under long-established caselaw, if a district court's reasons for a departure are stated on the record, an appellate court must determine whether the stated reasons justify

4

the departure." *State v. Grampre*, 766 N.W.2d 347, 351 (Minn. App. 2009), *review denied* (Minn. Aug. 26, 2009). "An upward departure will be reversed if the sentencing court's articulated reasons for the departure are improper or inadequate and the evidence in the record is insufficient to justify the departure." *Tucker v. State*, 799 N.W.2d 583, 586 (Minn. 2011) (quotations omitted). Appellate courts generally "review an upward departure from the presumptive guidelines sentence for an abuse of discretion." *Id.* at 585–86. The district court abuses its discretion if it relies on an invalid departure reason. *Dillon v. State*, 781 N.W.2d 588, 598 (Minn. App. 2010), *review denied* (Minn. July 20, 2010). "Whether a particular reason for an upward departure is permissible is a question of law, which is subject to a de novo standard of review." *State v. Yaritz*, 791 N.W.2d 138, 143 (Minn. App. 2010) (quotation omitted), *review denied* (Minn. Feb. 23, 2011). "[A]ny fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt." *State v. Dettman*, 719 N.W.2d 644, 647 (Minn. 2006) (quotation omitted).

Generally, departures are limited to "double the presumptive sentence length." *Perkins v. State*, 559 N.W.2d 678, 692 (Minn. 1997). "[F]or the district court to impose a greater-than-double-durational sentence, there must be severe aggravating factors." *State v. Stanke*, 764 N.W.2d 824, 828 (Minn. 2009). "[I]n such cases the only absolute limit on duration is the maximum provided in the statute defining the offense." *State v. Shattuck*, 704 N.W.2d 131, 140 (Minn. 2005) (citation omitted). Eighty-four months was the

statutory maximum sentence for second-degree assault with a dangerous weapon. Minn. Stat. § 609.222, subd. 1 (2004).

Here, in response to the district court's instruction, the state filed a sentencing memorandum addressing the facts in the case and the aggravating factors that it had previously noticed, as well as others. The detailed memorandum provides, in part, that:

> [Alfaro] subjected [M.D.] to extreme psychological and emotional abuse—as well as physical abuse. Here, [Alfaro] terrorized [M.D.] in her home, in front of her children for a period of over four hours. In an effort to ensure that [M.D.] did not report the crime to the police, [Alfaro] took her phones away from her for two days and kept her very close to him. He monitored her activities over the next six weeks until he was ultimately deported to Mexico.

At the sentencing hearing, the district court stated that it was adopting the state's memorandum, that "the aggravating factors do, in fact, exist, and do, in fact, justify an 84-month prison sentence," and that it would provide a written memorandum. The court also stated:

> Specifically, on June 11th of 2005 [Alfaro] became enraged at [M.D.] while the two were at [M.D.'s] residence with the children. [Alfaro] struck [M.D.] in her face and told her that he had to kill her. He did many of these acts while the children were present, including using a chair rung to push into [M.D.'s] genital areas.

Alfaro did not object at sentencing to anything contained in the state's sentencing memorandum, he did not object to the district court's adoption of the sentencing memorandum, he did not object to the district court's statement about the existence of aggravating factors, and he did not object to the court's statement that it would file a

written memorandum. After the sentencing hearing, the district court filed a memorandum, summarizing the bases for the agreed-upon upward-departure sentence.

Alfaro requests reversal of his conviction and sentence on the basis that his plea colloquy does not contain sufficient facts to support the aggravating factors on which the district court relied to support the upward-durational-departure sentence. We begin our review by addressing the facts that Alfaro offered during his plea colloquy, as they pertain to the aggravating factors:

> DEFENSE COUNSEL: Mr. Alfaro, you and I also had the opportunity to talk about how aggravating factors and aggravating sentences come into trial and how they play out, correct?
> ALFARO: Correct.
> DEFENSE COUNSEL: And I told you about *Blakely*. And you understand that you could have the jury decide about whether you were guilty of any of these charges, and you could have a jury decide—you have the right to have the jury decide beyond a reasonable doubt whether there are any aggravating factors. As far as both the trial of guilt, and the trial—or the consideration of aggravating factors, you can also have the judge decide that; do you understand?
> ALFARO: I do.
> DEFENSE COUNSEL: And it was my advice to you that, as far as aggravating factors, it was my advice that you have the judge decide that, not a jury; is that correct?
> ALFARO: Yes, it was.
> DEFENSE COUNSEL: And did it make sense to you?
> ALFARO: Yes.
> DEFENSE COUNSEL: As best you—as best I could explain it to you. But you understand that part of this is you are giving up, or you are waiving, your right to have a jury decide the aggravating factor question, and Judge Wilton is going to decide that?
> ALFARO: I understand that.
> DEFENSE COUNSEL: And once you waive it, you—you don't get to change your mind?
> ALFARO: Yeah.

DEFENSE COUNSEL: And you're prepared to do that this afternoon?

ALFARO: Yep.

THE COURT: And, Mr. Alfaro, I just want to follow up just a little bit more. You're agreeing to waive your *Blakely* issues. You're allowing me to decide that. But, essentially, you are already agreeing as part of your plea agreement to go to prison for 84 months; do you understand that? Seven years?

ALFARO: Seven years, yep.

THE COURT: Okay. And, so, essentially, today you are agreeing that there are aggravating factors to get your sentence to 84 months, or 7 years, you're agreeing to that; do you understand that?

ALFARO: Yes, I do.

THE COURT: Do you have any questions about that?

ALFARO: Nope.

THE COURT: Okay. Mr. Bergeson, factual basis.

DEFENSE COUNSEL: Thank you. Mr. Alfaro, I'm going to take you back to the time of approximately eight years ago. On June 11, 2011 (sic), were you in Scott County, Minnesota?

ALFARO: When?

DEFENSE COUNSEL: On June 11, 2005, were you in Scott County, Minnesota?

ALFARO: Yes, I was.

DEFENSE COUNSEL: And what city were you in?

ALFARO: Shakopee.

DEFENSE COUNSEL: And can you tell me where you lived?

ALFARO: I was living with MD . . . in a townhouse.

. . . .

DEFENSE COUNSEL: And you lived there. You were a guest of hers?

ALFARO: A houseguest, yes.

DEFENSE COUNSEL: It was her townhouse at that time, right?

ALFARO: Yeah.

DEFENSE COUNSEL: And you have two children with MD; is that right?

ALFARO: Yeah.

DEFENSE COUNSEL: And the two children live there?

ALFARO: That's right.

8

DEFENSE COUNSEL: And on June 11th, or maybe June 12th, was there an argument between you and MD?

ALFARO: Yes, there was.

DEFENSE COUNSEL: And would you say it was—how would you characterize the argument? Was it normal or bad?

ALFARO: Bad argument.

DEFENSE COUNSEL: Bad argument. And at—were you yelling?

ALFARO: Yeah.

DEFENSE COUNSEL: At some point in time during the—was this late at night?

ALFARO: It was late at night, yeah.

DEFENSE COUNSEL: Or maybe even early morning?

ALFARO: Actually, no.

DEFENSE COUNSEL: Passed 11:00?

ALFARO: She came by at 11:00 p.m., so—

DEFENSE COUNSEL: Okay. And you got into this argument. At some point did you become in possession of a weapon?

ALFARO: A knife, a kitchen knife.

DEFENSE COUNSEL: And you had that in your hand?

ALFARO: Yes, I had.

DEFENSE COUNSEL: And you were yelling?

ALFARO: Yeah, she was.

DEFENSE COUNSEL: And at this point you believe that [M.D.] was afraid? MD. I'm sorry.

ALFARO: Yeah.

DEFENSE COUNSEL: And the kids were—I think I asked you that. The kids were in the townhouse at that time?

ALFARO: They were in the townhouse, yeah. Yeah, they were.

DEFENSE COUNSEL: And, at that point in time, it was your intent to make her fearful, make her listen, make her fearful?

ALFARO: We were arguing. I guess so, yeah, I mean—

DEFENSE COUNSEL: It was a long time ago?

ALFARO: Yeah.

DEFENSE COUNSEL: Judge, I have no further questions. Judge, I just have a follow up question.

THE COURT: Absolutely.

DEFENSE COUNSEL: Mr. Alfaro, I just want to ask you a little bit better question. On that evening, June of 2005, you—your actions that—that evening, both with the knife that you

9

talked about and without the knife, your intent was to cause fear in M—MD?

ALFARO: My what?

DEFENSE COUNSEL: Cause fear in MD. And the fear would be immediate—immediate bodily harm? She was afraid that she could get hurt?

ALFARO: I believe so, yeah.

THE COURT: Ms. O'Brien, anything additional in regard to the facts?

THE PROSECUTOR: Your Honor, I—I was listening to what Mr. Bergeson said. I believe he covered the elements. I suppose if the court—I would defer to the court to make sure that you heard what I heard; that he admitted that he intended to cause fear of immediate bodily harm while possessing the knife.

THE COURT: And I believe that was his statement, but let me just ask. Mr. Alfaro, as you sit here today, do you believe that in fact MD was fearful because you were yelling at her and because you had a knife? Was she fearful?

ALFARO: Yeah.

THE COURT: For her safety?

ALFARO: Of what?

THE COURT: For her safety?

ALFARO: For her safety, yeah.

THE COURT: Okay. And your action—by your actions, that's what you intended? In other words—

ALFARO: Yeah.

THE COURT: —she wasn't laughing, right?

ALFARO: No. She was not laughing.

THE COURT: And you weren't laughing?

ALFARO: I wasn't laughing either.

THE COURT: Okay. Any additional questions, counsel?

THE PROSECUTOR: No. Thank you, Your Honor.

THE COURT: Mr. Bergeson, any additional questions?

DEFENSE COUNSEL: No, Your Honor. Thank you.

THE COURT: All right. Mr. Alfaro, I'm going to find that you've given a knowing and intelligent and a voluntary waiver of your rights; and that there is a sufficient factual basis in which to find you guilty. I'm going to accept your plea at this time. I'm going to order a presentence investigation.

. . . .

10

THE COURT: Okay. The other issue is that you have waived the *Blakely* issue. You've agreed today that there are severe aggravating factors which you've agreed to serve an 84-month sentence for. Those factors, my understanding, include, but may not be limited to; particular cruelty, position of trust, zone of privacy, and the fact that children were present. I would ask the state to prepare a memorandum outlining each of those factors and others that they deem appropriate. That you include any and all detail so that I can make findings. Although the parties have agreed to the 84 months, and that the defendant has waived *Blakely*, I believe under the law that I still have to find that these are severe aggravating circumstances given the fact that this is quadruple upward departure. Let's go off the record for a moment.

. . . .

THE COURT: Ms. O'Brien, is there anything additional that you want to place on the record in terms of, at least as of right now, about the quadruple upward departure or do you believe that I've covered it?

THE PROSECUTOR: Your Honor, I believe that you've covered the significant deal that he's getting and the agreement on the record, or the agreement to the 84 months. And I think the only thing that possibly is left out is when you would expect the state to have the memorandum to you?

The Minnesota Supreme Court has "long discouraged" district courts from establishing a factual basis by allowing a defendant's attorney to ask leading questions to elicit facts to support guilty pleas. *State v. Raleigh*, 778 N.W.2d 90, 95 (Minn. 2010). Regarding factual bases for aggravated sentences, rule 15.01, subdivision 2, of the Rules of Criminal Procedure provides that "[b]efore the judge accepts an admission of facts in support of an aggravated sentence, the defendant must be sworn and questioned by the judge with the assistance of defense counsel. . . . The defendant must state the factual basis for an aggravated sentence." Here, although Alfaro agreed to the existence of aggravating factors during his plea colloquy, no one elicited from him the facts contained

11

in the state's sentencing memorandum, and Alfaro did not volunteer the facts. We are troubled by the lack of adherence to the requirements of rule 15.01 by the district court, defense counsel, and prosecutor.

Alfaro does not challenge the validity of his guilty plea. He requests that we reverse his conviction but offers no argument or legal support for a reversal of his conviction. We conclude that his request is meritless. *See Schoepke v. Alexander Smith & Sons Carpet Co.*, 290 Minn. 518, 519–20, 187 N.W.2d 133, 135 (1971) ("An assignment of error based on mere assertion and not supported by any argument or authorities in appellant's brief is waived and will not be considered on appeal unless prejudicial error is obvious on mere inspection."), *cited in State v. Anderson*, 784 N.W.2d 320, 335 (Minn. 2010).

As to the existence of aggravating factors necessary to support Alfaro's upward-departure sentence, our review of the record reveals that defense counsel noted on the record that "[the state] listed four proposed grounds: particular cruelty, the children, zone of privacy, and the position of trust," and that counsel addressed each factor. Alfaro then pleaded guilty, waived his *Blakely* rights, and admitted the existence of aggravating factors sufficient to support an 84-month sentence, i.e., a quadruple-upward-departure sentence for second-degree assault with a dangerous weapon. We address the aggravating factors noticed by the state, except for position of trust, which the district court did not discuss.

### *Aggravating Factors*

#### *Presence of children*

Alfaro argues that the presence of children is not a valid aggravating factor in this case because the factor was codified after the crime was committed. We reject this argument. The sentencing guidelines provide a nonexclusive list of reasons for departure, *State v. Rourke*, 773 N.W.2d 913, 920 (Minn. 2009), and presence of children has long been recognized as an aggravating factor, *see State v. Profit*, 323 N.W.2d 34, 36 (Minn. 1982) (agreeing "that committing the offense in front of the children was a particularly outrageous act").

Alfaro also argues that the record does not support that children were present during his commission of second-degree assault with a dangerous weapon. We agree. Presence of children is a valid aggravating factor when a child can "see, hear, or otherwise witness any portion of the commission of the offense." *State v. Robideau*, 796 N.W.2d 147, 152 (Minn. 2011). The district court found that "[w]hile the two young children were present, [Alfaro] grabbed [M.D.] by her neck and threw her onto the bed. She lay in bed crying with the children in her arms." We disagree that the record facts are sufficient to support this aggravating factor. Although Alfaro admitted that children were present in the home, he did not admit that they saw, heard, or otherwise witnessed any portion of his commission of second-degree assault with a dangerous weapon, and the related facts in the complaint do not pertain to his commission of second-degree assault with a dangerous weapon. We therefore cannot conclude that the district court properly relied on the presence of children as a valid aggravating factor in sentencing Alfaro.

13

*Particular cruelty*

Alfaro argues that the record does not support the district court's reliance on the aggravating factor of particular cruelty. "Particular cruelty involves the gratuitous infliction of pain and cruelty of a kind not usually associated with the commission of the offense in question." *Tucker*, 799 N.W.2d at 586 (quotation omitted). The duration of the incident is relevant to whether an act was particularly cruel. *See State v. Rodriguez*, 505 N.W.2d 373, 377 (Minn. App. 1993) (citing with approval *Davis v. State*, 324 N.W.2d 802, 803 (Minn. 1982), in which supreme court was satisfied that particular cruelty justified double upward departure when assault continued for about five hours), *review denied* (Minn. Oct. 19, 1993). Here, the district court found that Alfaro "refused to let [M.D.] leave the house for nearly two days" and that, among other acts, he struck her, choked her, and threatened to poke her eyes out with a screwdriver. We cannot conclude that the district court properly relied on particular cruelty as a valid aggravating factor in this case because Alfaro did not admit such facts during his plea colloquy, stipulate to such facts, or agree that the court could consider facts contained in police reports or other documentary evidence.

*Zone of privacy*

Alfaro argues that the record facts are insufficient to support the aggravating factor that he violated M.D.'s zone of privacy. But Alfaro admitted during his plea colloquy that he was a houseguest in M.D.'s home, and the district court properly found that Alfaro's criminal acts occurred in M.D.'s home. *See State v. Copeland*, 656 N.W.2d 599, 603 (Minn. App. 2003) ("That [a third party who lived in the residence] invited [defendant]

14

into the residence while [the victim] slept upstairs does not negate the fact that this offense occurred in [the victim]'s home where, by virtue of the zone of privacy, he had a reasonable expectation of security that was shattered by [defendant]'s violent assault."), *review denied* (Minn. Apr. 29, 2003); *State v. Bates*, 507 N.W.2d 847, 850, 854 (Minn. App. 1993) (concluding that zone-of-privacy factor was present when defendant touched victim's penis on two occasions while living in the victim's home), *review denied* (Minn. Dec. 27, 1993). We conclude that the district court's reliance on Alfaro's violation of M.D.'s zone of privacy as a valid aggravating factor was proper.

***Pro Se Arguments and Request to Strike***

Alfaro argues in his pro se supplemental brief that (1) the victim's story was not credible, (2) he pleaded guilty because his attorney convinced him to lie, (3) his speedy trial right was violated, and (4) the district court judge was biased. The state argues that this court "should strike Alfaro's pro se supplemental brief entirely" because every page contains facts not in the record. "The record on appeal consists of the papers filed in the district court, the offered exhibits, and the transcript of the proceedings, if any." Minn. R. Crim. P. 28.02, subd. 8. And "an appellate court may not base its decision on matters outside the record on appeal." *Holt v. State*, 772 N.W.2d 470, 481 n.5 (Minn. 2009) (quotation omitted). We strike Alfaro's pro se supplemental brief because the arguments contained in it are supported by facts not in the record. *See State v. Manley*, 664 N.W.2d 275, 286 (Minn. 2003) (granting state's motion to strike paragraphs from pro se brief that were "unsupported by any facts in the record").

15

***Remand Not Necessary***

"[W]hen a reviewing court concludes that a district court based a departure on both valid and invalid factors, a remand is required unless it determines the district court would have imposed the same sentence absent reliance on the invalid factors." *State v. Vance*, 765 N.W.2d 390, 395 (Minn. 2009) (quotation omitted). The presence of a single valid aggravating factor is sufficient to support an upward departure. *See State v. Petersen*, 799 N.W.2d 653, 659 (Minn. App. 2011) (citing *State v. O'Brien*, 369 N.W.2d 525, 527 (Minn. 1985), and upholding upward-departure sentence when "at least one of the aggravating circumstances stated by the district court [was] supported by the record"), *review denied* (Minn. Sept. 28, 2011).

Here, we consider whether the sentencing court would have imposed an 84-month sentence, relying on the single aggravating factor of Alfaro's violation of M.D.'s zone of privacy. *See id.* We conclude that the district court would have imposed the same sentence absent reliance on the factors that are not supported by facts offered by Alfaro at his plea hearing.

Alfaro also argues that severe aggravating circumstances that are necessary to support the imposition of a greater-than-double-upward-departure sentence are not present in this case and that no unusual facts were adduced that would support a finding that the circumstances were severe. "[W]e review upward durational sentencing departures that are greater than twice the presumptive sentence for an abuse of discretion." *Dillon*, 781 N.W.2d at 594. We review de novo "whether the valid departure reasons are severe[] so as to justify a sentence that runs longer than twice the presumptive

16

sentence." *Id*. at 598. "A district court abuses its discretion if it relies on invalid bases . . . to extend the sentence beyond double its presumptive length." *Id.*

Alfaro argues that the district court made no factual findings to support the aggravating circumstances and did not categorize the aggravating factors as "severe" before imposing sentence. We reject Alfaro's arguments. First, Alfaro cites no legal authority that requires that a district court make findings when a defendant waives his *Blakely* rights and agrees to the existence of aggravating factors. We reject Alfaro's argument that the district court was required to make findings to support the greater-than-double-upward-departure sentence. Second, at the plea hearing, the district court noted that a sentence greater than double the presumptive sentence "is justified when facts are unusually compelling," which we interpret to mean "severe." In the state's sentencing memorandum, which the court adopted without objection by Alfaro, the state specifically addressed the "severe aggravating factors" that justify the greater-than-double-upward-departure sentence. And in its memorandum following sentencing, the court again stated that "the facts of this case are unusually compelling."

We conclude that Alfaro's violation of M.D.'s zone of privacy was severe, so as to justify his sentence that runs longer than twice the presumptive sentence, and we conclude that the district court did not abuse its discretion by imposing the 84-month sentence to which Alfaro agreed. Moreover, we are convinced beyond a reasonable doubt that if we were to remand this case to the district court, the court would determine that the sole aggravating factor of violating M.D.'s zone of privacy warranted the imposition of a sentence that exceeded a double durational departure. We conclude that Alfaro is not

entitled to relief from his conviction or sentence. We decline Alfaro's request for a remand to the district court, and we affirm.

**Affirmed.**