**STATE of Minnesota, Respondent,**

v.

**Booker T. HODGES, Appellant.**

**No. A07–1519.**

Supreme Court of Minnesota.

Aug. 13, 2009.

**516**

Lori Swanson, Attorney General, and; Susan Gaertner, Ramsey County Attorney, Thomas R. Ragatz, Assistant County Attorney, St. Paul, MN, for respondent.

Lawrence Hammerling, Chief Appellate Public Defender, James R. Peterson, Assistant State Public Defender, St. Paul, MN, for appellant.

## OPINION

ANDERSON, PAUL H., Justice.

Booker T. Hodges pleaded guilty to one count of third-degree criminal sexual conduct. Because Hodges is a repeat sex offender, his conduct fell within the ambit of Minn.Stat. § 609.3455, subd. 4(a)(1) (2008), which mandates a life sentence for certain repeat sex offenders. In a plea agreement, Hodges stipulated to a sentence of life in prison, with a minimum term of imprisonment of 240 months before he is eligible for supervised release. On appeal, Hodges challenges the part of his sentence mandating a minimum term of imprisonment of 240 months. He argues that his sentence is inconsistent with Minn.Stat. 609.3455, subd. 5 (2008). We affirm.

On December 13, 2006, appellant Booker T. Hodges was indicted on one count of Criminal Sexual Conduct in the First Degree, Minn.Stat. § 609.342, subd. 1(g) (2008) and Minn.Stat. § 609.3455, subd. 4(a)(1), and one count of Criminal Sexual Conduct in the Third Degree, Minn.Stat. § 609.344, subd. 1(b) (2008) and Minn.Stat. § 609.3455, subd. 4(a)(1). The indictment was based in part on a videotape recovered by the police which depicted Hodges engaging in sexual intercourse with his 14–year–old stepdaughter, J.C.

On March 29, 2007, Hodges pleaded guilty to one count of Criminal Sexual Conduct in the Third Degree.[1] At his plea hearing, Hodges admitted that he began conversing with his stepdaughter while he was still in prison for a prior sex offense. During those conversations, Hodges told J.C. that he wanted to teach her about boys and that he wanted to have sexual relations with her. After Hodges was released from prison, he visited J.C. at her home on several occasions, intentionally picking times when his wife—J.C.'s mother—would not be home. Hodges admitted that during these visits he had sexual relations with J.C. on four or five occasions. Hodges confirmed that he and J.C. engaged in digital/vaginal, oral/vaginal, and penile/vaginal penetration.

On one particular visit, Hodges videotaped one of the incidents of sexual intercourse between him and J.C. During the incident, Hodges positioned the video monitor in such a way as to allow J.C. to witness the incident from the camera's perspective. On another occasion, Hodges asked J.C. to tell him that she was 18 years old, so that Hodges could potentially pass a lie detector test. Throughout all of these events, Hodges concealed his conduct from J.C.'s mother.

Hodges has previously been convicted for similar conduct and is a repeat sex offender. In 1990, Hodges was convicted of fourth-degree criminal sexual conduct in Hennepin County. In 1995, Hodges was convicted of third-degree criminal sexual conduct in Kandyohi County in a case involving a 14–year–old female victim. Finally, in 2000, Hodges was convicted of third-degree criminal sexual conduct in Ramsey County. The 2000 victim was 15 years old.

In 2005, the legislature passed a law imposing enhanced sentences on certain sex offenders. *See* 2005 Act of May 31,

---

1. Section 609.344, subd. 1(b) provides that "[a] person who engages in sexual penetration with another person is guilty of criminal sexual conduct in the third degree if ... the complainant is at least 13 but less than 16 years of age and the actor is more than 24 months older than the complainant."

2005, ch. 136, art. 2, § 21, 2005 Minn. Laws 901, 929–31 (codified at Minn.Stat. § 609.3455). In some cases involving certain egregious first-time offenders and repeat offenders, the statute requires district courts to impose a sentence of life in prison without the possibility of release. *See* Minn.Stat. § 609.3455, subd. 2. In other cases, the court is required to sentence the defendant to life in prison, but the defendant is eligible for supervised release after he has completed his "minimum term of imprisonment." *See* Minn.Stat. § 609.3455, subds. 3–4. In this latter category of cases involving defendants who may become eligible for supervised release, the statute requires courts to specify, at the time of sentencing, "a minimum term of imprisonment, based on the sentencing guidelines or any applicable mandatory minimum sentence, that must be served before the offender may be considered for supervised release." Minn.Stat. § 609.3455, subd. 5.[2]

When Hodges pleaded guilty, he waived his right to a jury trial and to a *Blakely* trial. Pursuant to the plea agreement, the district court sentenced Hodges to life in prison, with a minimum term of imprisonment of 240 months. Although the parties stipulated to the 240 month minimum term of imprisonment, there was some confusion at Hodges' sentencing hearing as to the proper foundation for imposing the 240 month minimum term of imprisonment. Therefore, the court engaged in two dis-

tinct modes of analysis to arrive at its result. First, the court imposed a 240 month minimum term of imprisonment on the theory that the sentencing guidelines did not apply to Hodges. Second, the court, in the alternative, imposed the same 240 month minimum term of imprisonment using the sentencing guidelines. At sentencing, the court stated: "I would like a reviewing court to know that I do find that if the guidelines were to be applied, that there are aggravating factors that have been established in this case." The court then went on to find seven aggravating factors: particular vulnerability, particular cruelty, zone of privacy, multiple incidents, multiple forms of penetration, sophistication and planning, and a prior offense.[3] The court concluded that these aggravating factors justified the 240 month minimum term of imprisonment.

Hodges appealed his sentence, and the court of appeals affirmed. *State v. Hodges,* 757 N.W.2d 693, 695 (Minn.App.2008). The court of appeals concluded that the "any applicable mandatory minimum sentence" language of Minn.Stat. § 609.3455, subd. 5 included the mandatory life sentence of Minn.Stat. § 609.3455, subd. 4. *Id.* at 696. The court of appeals then reasoned that because Minn.Stat. § 244.05, subd. 4(d) does not state how long a life sentence must be for violations of Minn. Stat. § 609.3455, subd. 4, district courts have the discretion to set the "minimum

---

**2.** The requirement that the district court pronounce the minimum term of imprisonment is relatively novel in Minnesota's criminal justice system. In most cases, the minimum term of imprisonment "is the period of time equal to two-thirds of the inmate's executed sentence." *See* Minn.Stat. § 244.01, subd. 8 (2008).

**3.** The district court noted that although Hodges has three prior sex offenses, the court would only count one of the prior offenses as an aggravating factor because two of Hodges'

prior offenses were elements of the statutory enhancement, *see* Minn.Stat. § 609.3455, subd. 4(a)(1). *See generally See generally State v. Jones,* 745 N.W.2d 845, 849 (Minn.2008), (holding that to be a "proper departure," "'[t]he reasons used for departing must not themselves be elements of the underlying crime.'" (*quoting State v. Blanche,* 696 N.W.2d 351, 378–79 (Minn.2005))). A prior conviction may be an aggravating factor pursuant to Minn. Sent. Guidelines II.D(2)(b)(3).

term" of the life sentence referred to in Minn.Stat. § 609.3455, subd. 5. *Id.* To give meaning to the reference in Minn.Stat. § 609.3455, subd. 5 to the sentencing guidelines, the court of appeals "interpret[ed] Minn.Stat. § 609.3455, subd. 5 as requiring district courts to set the minimum term of imprisonment for defendants who have violated Minn.Stat. § 609.3455, subd. 4 to at least the sentence called for by the sentencing guidelines." *Id.* at 696.

We granted Hodges' petition for review on the single issue of how a district court should determine a minimum period of imprisonment under Minn.Stat. § 609.3455, subd. 5.

## I.

■ We first address the issue of what procedure a district court should employ in pronouncing a "minimum term of imprisonment." The question presented requires an interpretation of Minn.Stat. § 609.3455, subd. 5. Statutory interpretation is an issue of law that we review de novo. *State v. Mauer,* 741 N.W.2d 107, 111 (Minn.2007).

■ Our goal when interpreting statutory provisions is to ascertain and effectuate the intention of the legislature. Minn.Stat. § 645.16 (2008); *Educ. Minn.-Chisholm v. Indep. Sch. Dist. No. 695,* 662 N.W.2d 139, 143 (Minn.2003). If the meaning of a statute is unambiguous, we interpret the statute's text according to its plain language. *Molloy v. Meier,* 679 N.W.2d 711, 723 (Minn.2004). If a statute is ambiguous, we apply other canons of construction to discern the legislature's intent. *See* Minn. Stat. §§ 645.08, 645.16, 645.17 (2008); *Gomon v. Northland Family Physicians, Ltd.,* 645 N.W.2d 413, 416 (Minn.2002).

Minnesota Statutes section 609.3455, subd. 5, provides that "[a]t the time of sentencing under subdivision 3 or 4, the court shall specify a minimum term of imprisonment, based on the sentencing guidelines or any applicable mandatory minimum sentence, that must be served before the offender may be considered for supervised release." Referring to Minn. Stat. § 609.3455, subd. 5, the commentary to the Minnesota Sentencing Guidelines provides that:

> The 2005 Legislature enacted statutory changes allowing life sentences with the possibility of release for certain sex offenders. The statute requires the sentencing judge to pronounce a minimum term of imprisonment, based on the sentencing guidelines and any applicable mandatory minimum, that the offender must serve before being considered for release. All applicable sentencing guidelines provisions, including the procedures for departing from the presumptive sentence, are applicable in the determination of the minimum term of imprisonment for these sex offense sentences.

Minn. Sent. Guidelines II.C.08.

■ The crux of the issue before us is what it means for a minimum term of imprisonment to be "based on" the sentencing guidelines or any applicable mandatory minimum sentence. By requiring that the minimum term of imprisonment be "based on" the guidelines or any applicable mandatory minimum sentence, the legislature has provided "an initial or starting point for calculation." *See* Black's Law Dictionary 192 (4th ed.1968) (definition of "based upon"). But the starting point for calculation as articulated by the legislature has led to some confusion in sentencing. The confusion in applying subdivision 5 has resulted in part from the fact that the parts of the sentencing guidelines relevant to this case already take account of any applicable mandatory minimum sentences. Therefore, subdivision

5's requirement that the minimum term of imprisonment be "based on" the sentencing guidelines or an applicable mandatory minimum sentence appears to be redundant or superfluous because basing the minimum term of imprisonment on the sentencing guidelines necessarily reflects any applicable mandatory minimum sentence.

The court of appeals dealt with this apparent redundancy by concluding that the minimum term of imprisonment must be based on the mandatory life sentence imposed by Minn.Stat. § 609.3455 itself. *Hodges,* 757 N.W.2d at 696. Taken to its logical conclusion, the court of appeals' construction would necessitate sentencing all defendants convicted under Minn.Stat. § 609.3455, subds. 3 and 4 to life in prison with a minimum term of imprisonment of life—in other words, life in prison with no possibility of supervised release. We conclude that such a construction of the statute makes little sense because a different section of the same statute, Minn.Stat. § 609.3455, subd. 2, requires a sentence of life in prison with *no possibility of supervised release* for certain defendants convicted of criminal sexual conduct. Construing section 609.3455, subds. 3 and 4 as requiring a minimum term of imprisonment of life in prison with no possibility of release would effectively eviscerate any difference between subdivision 2 and subdivisions 3 and 4. Such a construction of section 609.3455, subd. 5 would violate that oft-repeated rule that "[e]very law shall be construed, if possible, to give effect to all its provisions." Minn.Stat. § 645.16.

A better reading of Minn.Stat. § 609.3455, subd. 5 interprets the phrase "any applicable mandatory minimum sentence" to refer to the mandatory minimum sentences found in Minn.Stat. § 609.342, subd. 2 (2008) and Minn.Stat. § 609.343, subd. 2 (2008). These two provisions, both of which are predicate offenses for section 609.3455, subds. 3 and 4, each contain a presumptive minimum executed sentence—144 months for first-degree criminal sexual conduct and 90 months for second-degree criminal sexual conduct. *See* Minn.Stat. § 609.342, subd. 2; Minn.Stat. § 609.343, subd. 2. This approach also gives meaning to the "based on the sentencing guidelines" language of Minn.Stat. § 609.3455, subd. 5. The remaining predicate offenses—Minn. Stat. § 609.344, Minn.Stat. § 609.345 (2008), and Minn. Stat. § 609.3453—do not have presumptive minimum sentences. Without the phrase "based on the sentencing guidelines," section 609.3455, subd. 5 would provide the district courts no guidance on how to specify a minimum term of imprisonment for a predicate offense that does not have a presumptive minimum sentence.

Although this interpretation of Minn. Stat. § 609.3455, subd. 5 may initially make the subdivision's reference to mandatory minimum sentences appear redundant, the development of the statutory scheme sheds light on the legislature's intent. Therefore, a brief summary of the development of the statutory scheme is helpful to understand our legal analysis.

At the time section 609.3455 was adopted, the presumptive minimum executed sentences found in sections 609.342, subd. 2, and 609.343, subd. 2, were greater than the sentences otherwise called for by the guidelines. *See* Minn. Sent. Guidelines IV (2004). For example, the 2004 guidelines called for a presumptive sentence of 81 to 91 months for an offender with a criminal history score of zero who committed first-degree criminal sexual conduct or first-degree assault. The guidelines noted in a footnote, however, that Minn.Stat. § 609.342, subd. 2, had effectively raised the minimum presumptive sentence for first-degree criminal sexual conduct to 144

months. Minn. Sent. Guidelines IV n. 2 (2004). Conversely, the guidelines called for a presumptive sentence of 44 to 52 months for an offender with a criminal history score of zero who committed second-degree criminal sexual conduct or first-degree aggravated robbery. The same footnote, however, stated that Minn. Stat. § 609.343, subd. 2 had effectively raised the minimum presumptive sentence for second-degree criminal sexual conduct to 90 months. *See id.* Subsequent to the enactment of Minn.Stat. § 609.3455, subd. 5, the sentencing guidelines were amended to reflect the mandatory minimum sentences found in Minn.Stat. § 609.342, subd. 2 and Minn.Stat. § 609.343, subd. 2, *see* Minn. Sent. Guidelines IV (sex offender grid). Consequently, the mandatory minimum sentences and the presumptive guideline sentences are now the same.

The foregoing sequence in the development of the law which has resulted in conformity in the mandatory minimum sentence under both the statutory scheme and the sentencing guidelines does not alter our legal analysis, but supports it and helps explain it. This is so because the legislature might in the future enact a new mandatory minimum sentence for any of the predicate offenses listed in section 609.3455, subds. 3 and 4. Similarly, the Minnesota Sentencing Guidelines Commission might in the future change the presumptive guidelines sentence for the relevant predicate offenses. In either case, section 609.3455, subd. 5's reference to "any applicable mandatory minimum sentence" would spring back to life, requiring district courts to base the minimum term of imprisonment on the applicable mandatory minimum sentence found in the predicate offense.

In sum, the logical effect of the statutory scheme is to create a system where after imposing a life sentence pursuant to Minn.Stat. § 609.3455, subds. 3 or 4, the district court must, pursuant to subdivision 5, specify a minimum term of imprisonment using the procedures that would have been used to sentence the defendant in the absence of the mandatory life sentence found in Minn.Stat. § 609.3455, subd. 3 and 4—that is, by reference to any applicable mandatory minimum sentence or the sentencing guidelines. Here, it is undisputed that the underlying crime to which Hodges pleaded guilty—third-degree criminal sexual conduct, Minn.Stat. § 609.344, subd. 1(b)—contains no mandatory minimum sentence. Therefore, we conclude that the proper procedure for pronouncing Hodges' minimum term of imprisonment was to follow the same procedure a district court would have used under the sentencing guidelines to sentence Hodges in the absence of the mandatory life sentence imposed by Minn.Stat. § 609.3455, subd. 4.

## II.

Having determined that Hodges minimum term of imprisonment should have been calculated using the same procedure a district court would have used to sentence Hodges in the absence of the mandatory life sentence imposed by Minn.Stat. § 609.3455, subd. 4, we turn next to the question of whether the district court properly applied the sentencing guidelines in imposing a minimum term of imprisonment of 240 months.

In the context of this case, the sentencing guidelines would yield a presumptive sentence of 91 months, with a presumptive range of 77 to 109 months.[4] *See* Minn. Sent. Guidelines II.C. Therefore, the par-

4. This calculation is based on Hodges' criminal history score of 4 and the crime of third- degree criminal sexual conduct.

ties agree that because the district court sentenced Hodges to a minimum term of imprisonment of 240 months, the court was required to find aggravating circumstances under Minn. Sent. Guidelines II.D in order to support the minimum term of imprisonment of 240 months, which amounts to an upward departure.

■ Hodges argues that because the district court was unsure whether the sentencing guidelines applied in this case, the sentencing was "fundamentally tainted." Specifically, Hodges alleges that the State failed to give timely notice of its intent to seek an upward departure, and there were no facts in the record that support the aggravating factors found by the court. We conclude that Hodges' arguments lack merit.

Hodges first argues that he lacked notice of the State's intent to seek an upward departure. Where, as here, a defendant pleads guilty and stipulates to a sentence (or minimum term of imprisonment) greater than the presumptive sentence, it would make little sense to allow the defendant to attack the sentence on appeal on the grounds that he lacked notice of the State's intent to seek an upward departure. Because Hodges stipulated to the upward departure, we conclude that he had notice.

Further, we find no merit in Hodges' argument that the seven aggravating factors listed by the district court are not supported in the record. On the contrary, each of the aggravating factors found by the court is supported by evidence in the record—Hodges' prior conviction, the physical evidence produced by the State, and Hodges' admissions during his plea hearing.

■ Although not raised by Hodges, we note that the imposition of a minimum term of imprisonment of 240 months

amounts to a greater-than-double-durational sentence, which must be supported by aggravating factors that are "severe." *See State v. Stanke*, 764 N.W.2d 824, 828 (Minn.2009) (citing *State v. Evans*, 311 N.W.2d 481, 483 (Minn.1981) (concluding that "generally in a case in which an upward departure in sentence length is justified, the upper limit will be double the presumptive sentence length.")). Here, the district court made no finding that the aggravating factors were severe.

■ Ordinarily, when the facts found only support an improper or inadequate reason for departure, we have remanded for further proceedings. *See State v. Jones*, 745 N.W.2d 845, 851 (Minn.2008). However, in cases such as this one, where the defendant has waived his right to a *Blakely* trial and stipulated to the upward departure, and our independent review the record for evidence confirms that the departure was justified, there is no need to remand for resentencing. *See, e.g., Stanke*, 764 N.W.2d at 828. Here, we are satisfied that the aggravating factors found by the district court are sufficiently severe to justify the imposition of a minimum term of imprisonment amounting to a slightly greater-than-double-durational sentence.

Because the district court properly based Hodges' minimum term of imprisonment on the sentencing guidelines, we affirm.

Affirmed.