*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A13-1992**

State of Minnesota,
Respondent,

vs.

President Pimping Austin,
Appellant.

**Filed October 27, 2014
Affirmed
Schellhas, Judge**

Washington County District Court
File No. 82-CR-12-5030

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Pete Orput, Washington County Attorney, Robin M. Wolpert, Assistant County Attorney, Stillwater, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Davi E. Axelson, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Schellhas, Presiding Judge; Worke, Judge; and Rodenberg, Judge.

**U N P U B L I S H E D   O P I N I O N**

**SCHELLHAS**, Judge

Appellant argues that the district court abused its discretion by admitting relationship evidence and imposing a greater-than-double upward departure. We affirm.

# FACTS

Appellant President Austin occasionally lived in K.B.'s home in Oakdale with K.B., her daughter, S., age 41 months, and son, P.A., age 22 months. Austin is the father of P.A., who was born January 3, 2011. On or around November 30, 2012, P.A. "pooped on himself," and Austin took P.A. into the bathroom. K.B. then heard P.A. cry like she had not heard him cry before, saying, "No daddy. Stop daddy." Eventually, Austin brought P.A. to K.B.; told her that P.A.'s penis was swollen; and showed her whip marks on P.A.'s legs, buttocks, and penis. P.A.'s legs were bloody and the marks remained on them for at least three months. Partly because K.B. was afraid that Austin would beat her, K.B. did not call the police about P.A.'s injuries, nor did she seek medical attention for P.A.

On December 4, 2012, Austin's mother picked up S. and P.A. to care for them and discovered that P.A.'s body was covered with whip marks and open scabs and his genitals were swollen. Austin's mother took the children to a hospital and then the Midwest Children's Resource Center. On December 6, a nurse found P.A.'s injuries to be "consistent with a clinical diagnosis of child physical abuse," finding that his whip marks were too many too count; "extend[ed] from his buttocks and pubic symphysis extending down his front and back of his legs"; and "[were] consistent with being brutally hit with a cord, such that the edges of the cord dug into his skin." Dr. Caroline Levitt also observed P.A.'s injuries or photographs, depicting whip marks all over P.A.'s buttocks and the back of his thighs, injuries to his testicles, and a whip mark across the tip of his penis.

On December 7, 2012, Austin kicked K.B. and hit her on her back and head. K.B. reported the assault to Austin's mother, who reported it to the Oakdale Police Department. When police investigated, K.B. reported that Austin had hit P.A. with an audio-visual cord. The police seized the cord from the bathroom floor and arrested Austin nearby the Oakdale home.

Respondent State of Minnesota charged Austin with felony malicious punishment of P.A., a child under the age of four, in violation of Minn. Stat. § 609.377, subds. 1, 4 (2012), felony domestic assault of K.B., and violation of an order for protection (OFP).[1] The state noticed its intent to introduce relationship evidence and to seek an upward sentencing departure based on P.A.'s particular vulnerability and Austin's particular cruelty. Austin waived his right to have a jury determine his guilt and the facts underlying the aggravating factors. He also stipulated that he had a November 2010 conviction of felony domestic assault, an August 2011 conviction of domestic assault by strangulation, and a March 2012 conviction of violation of a no-contact order. The district court found Austin guilty of felony malicious punishment of P.A. and domestic assault of K.B., concluded that P.A. was particularly vulnerable and that Austin committed the malicious punishment with particular cruelty, and sentenced Austin to consecutive sentences of 60 months for felony malicious punishment and 12 months and 1 day for felony domestic assault. The 60-month sentence is 4 months greater than double the presumptive length.

This appeal follows.

---

[1] The state dismissed the OFP-violation charge before trial.

## D E C I S I O N

*Relationship Evidence*

K.B. testified about her relationship with Austin before his assault of her on December 7, 2012, including that Austin "has anger issues"; called her "[b]-tch, ho, [and] slut"; beat her; and was charged with "beating" her in June 2010. Austin objected to K.B.'s testimony about the June 2010 beating as irrelevant, and the district court overruled the objection. K.B. thereafter explained that, during the June 2010 incident, she was pregnant with P.A. and Austin beat her for seven hours. Austin argues for the first time on appeal that the district court abused its discretion by admitting the relationship evidence under Minn. Stat. § 634.20 (2012), because the evidence was more prejudicial than probative. We therefore review the admission of the evidence for plain error. *See Montanaro v. State*, 802 N.W.2d 726, 732 (Minn. 2011) (stating that failure to object to trial error generally waives right to review of that error but noting that Minn. R. Crim. P. 31.02 permits appellate courts to review unobjected-to trial errors for plain error); *see also State v. Abraham*, 338 N.W.2d 264, 266 (Minn. 1983) (declining to address district court's allowance of testimony in part because defense counsel did not state precise objection on record).

"Under the plain-error test, an appellant must show that there was (1) an error; (2) that is plain; and (3) the error must affect substantial rights." *State v. Vang*, 847 N.W.2d 248, 261 (Minn. 2014). Under the first step of that test, whether the district court erred turns on whether it abused its discretion. *See State v. Hayes*, 826 N.W.2d 799, 808 (Minn. 2013) (declining to "consider the remaining prongs of the plain-error test" after

4

concluding that "the district court did not abuse its discretion in admitting the challenged testimony"); *State v. Jenkins*, 782 N.W.2d 211, 230–31 (Minn. 2010) (concluding during plain-error review that "the district court did not abuse its discretion or commit any error when it granted the State's motion to exclude the evidence on relevance grounds"); *see also State v. Goelz*, 743 N.W.2d 249, 254 (Minn. 2007) ("Rulings on evidentiary matters rest within the sound discretion of the trial court, and [an appellate court] will not reverse such evidentiary rulings absent a clear abuse of discretion." (quotation omitted)).

Minnesota Statutes section 634.20 provides that

> [e]vidence of similar conduct by the accused against the victim of domestic abuse . . . is admissible unless the probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issue, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

Unlike "traditional 'collateral' *Spreigl* evidence, which concerns 'an unrelated crime against another person,' not the present victim, . . . [relationship] 'evidence . . . illuminates the history of the relationship *between an accused and a victim.*'" *State v. Rossberg*, 851 N.W.2d 609, 615 (Minn. 2014) (quoting *State v. McCoy*, 682 N.W.2d 153, 159, 161 (Minn. 2004)). Relationship evidence is relevant because of that illumination and because it "may also help prove motive or assist the jury in assessing witness credibility." *State v. Matthews*, 779 N.W.2d 543, 549 (Minn. 2010).

Here, the relationship evidence was probative because it was "evidence of past acts of violence committed by the same defendant against the same victim." *State v. Bell*, 719 N.W.2d 635, 641 (Minn. 2006) (quotation omitted). We reject Austin's argument

5

that the evidence was unfairly prejudicial. "[U]nfair prejudice is evidence that persuades by illegitimate means, giving one party an unfair advantage." *Id.* (quotation omitted). The state notified Austin in advance of trial that it intended to introduce relationship evidence. The state did not introduce the relationship evidence to persuade by illegitimate means. We conclude that the district court did not abuse its discretion by admitting the relationship evidence and therefore decline to consider the remaining prongs of the plain-error test.

### *Sentence Greater than Double Upward Departure*

Felony malicious punishment of a child under the age of four has a severity level of four. Minn. Sent. Guidelines 5.A (2012). Austin's criminal-history score was four. The presumptive sentencing range for Austin's conviction of felony malicious punishment under Minnesota Statutes section 609.377, subdivision 4, is 21−28 months. Minn. Sent. Guidelines 4.A (2012). The maximum sentence for felony malicious punishment of a child under the age of four is five years. Minn. Stat. § 609.377, subd. 4 (2012). Based on P.A.'s particular vulnerability and Austin's particular cruelty, the district court imposed a 60-month sentence, which is 4 months greater than a double upward durational departure from the high range of the presumptive sentence. Austin argues that the court abused its discretion.

We generally review an upward departure from the presumptive guidelines sentence for an abuse of discretion. *Tucker v. State*, 799 N.W.2d 583, 585–86 (Minn. 2011). We review de novo "whether a valid departure ground exists, relying on the factual findings that support the decision," *State v. Weaver*, 796 N.W.2d 561, 567 (Minn.

App. 2011)*,* and "whether the valid departure reasons are severe," *Dillon v. State*, 781 N.W.2d 588, 598 (Minn. App. 2010), *review denied* (Minn. July 20, 2010). "[A]ggravating factors [are] reasons explaining why the facts of the case provide the district court a substantial and compelling basis to impose a sentence outside the range on the grid." *State v. Rourke*, 773 N.W.2d 913, 920 (Minn. 2009) (emphasis omitted). Generally, departures require "[s]ubstantial and compelling circumstances" that "demonstrat[e] that the defendant's conduct in the offense . . . was *significantly* more or less serious than that typically involved in the commission of the crime in question." *Tucker*, 799 N.W.2d at 586 (quotations omitted). "Only in cases of severe aggravating circumstances may the district court impose a greater-than-double departure from the presumptive sentence . . . ." *State v. Shattuck*, 704 N.W.2d 131, 140 (Minn. 2005) (quotation omitted).

*Aggravating Factors*

Austin argues that the district court's order and statements at the sentencing hearing show that the court based its sentencing departure not only on P.A.'s particular vulnerability and Austin's particular cruelty but also on (1) Austin's restraint of P.A., (2) Austin's lack of remorse, (3) Austin's escalating and ongoing violence shown by his criminal history, (4) Austin's position of trust as to P.A., (5) Austin's relationship as father to P.A., and (6) P.A.'s expectation of privacy where the offense was committed. We conclude that the court relied on those facts only as support for the two aggravating factors that it identified—P.A.'s particular vulnerability and Austin's particular cruelty. Although the court did mention additional aggravating factors at the sentencing hearing,

7

including Austin's position of trust and P.A.'s expectation of privacy, factors not noticed by the state, nothing in the record suggests that the court was modifying its July 11 order to add the departure grounds not noticed by the state. To the contrary, the court stated that it was imposing the upward departure "[f]or the reasons enumerated and stated in [its] previous orders and analysis."

*Particular Vulnerability*

Although the court generally may depart based on the victim's "particular[] vulnerab[ility] due to age, infirmity, or reduced physical or mental capacity," Minn. Sent. Guidelines 2.D.3.b.(1) (2012), it may not depart based on "facts necessary to prove elements of the offense being sentenced" or "facts that, while not necessary to satisfy the elements of the offense in question, were nonetheless contemplated by the legislature when it set the punishment for the offense being sentenced," *State v. Edwards*, 774 N.W.2d 596, 602 (Minn. 2009). And the court must not base a particular-vulnerability departure on "the victim's vulnerability . . . as to age . . . where th[e] fact[] [was] already taken into account by the legislature in determining the degree of seriousness of the offense." *Taylor v. State*, 670 N.W.2d 584, 589 (Minn. 2003).

Malicious punishment of a child that "results in less than substantial bodily harm" is ordinarily a gross misdemeanor. Minn. Stat. § 609.377, subds. 1, 2 (2012). But, for children under the age of four, the legislature enhanced the seriousness of malicious punishment by providing that the offense is a felony when the punishment results in "bodily harm to the head, eyes, neck, or . . . multiple bruises to the body." *Id.*, subds. 1, 4. We recognize that, even though age is an element of the offense, a child in infancy may

8

be particularly vulnerable due to age. *See State v. Turrubiates*, 830 N.W.2d 173, 175, 177–80 (Minn. App. 2013) (19-month-old victim of felony murder), *review denied* (Minn. July 16, 2013); *State v. Mohamed*, 779 N.W.2d 93, 97–99 (Minn. App. 2010) (4-month-old victim of malicious punishment in case charged under Minn. Stat. § 609.377, subds. 1, 6 (2006)), *review denied* (Minn. May 18, 2010). In *Mohamed*, this court noted that the child was "particularly vulnerable among the broad class of child victims who are covered by the statute[,i.e., all children under the age of 18]." 779 N.W.2d at 98. But this court also stated that "the legislature has recognized *in subdivision 4* the particular vulnerability of children under age four by criminalizing punishment resulting in harm that does not rise to the level of the 'great bodily harm' required by subdivision 6." *Id.* at 98 (emphasis added).

In this case, we conclude that, because P.A.'s vulnerability was due to his age, particular vulnerability was an impermissible aggravating factor on which to base a sentencing departure for malicious punishment under section 609.377, subdivision 4. The district court therefore impermissibly relied on the aggravating factor of P.A.'s particular vulnerability to support an upward sentencing departure.

*Particular Cruelty*

Generally, the court may depart based on the aggravating factor of the offender's treatment of the victim "with particular cruelty for which the . . . offender should be held responsible." Minn. Sent. Guidelines 2.D.3.b.(2) (2012). Austin maintains that that factor was unavailable for departure for this offense. We disagree. For departure purposes, conduct is "[p]articular[ly]" cruel when it "involves the gratuitous infliction of pain and

cruelty *of a kind not usually associated with the commission of the offense in question*." *Tucker*, 799 N.W.2d at 586 (emphasis added) (quotation omitted).

Austin argues that the district court improperly relied on the existence of numerous marks on P.A.'s body, arguing that "this factor was already accounted for by the legislature" when it criminalized "infliction of 'multiple bruises,' on a child under four, when a child's head, eyes or neck are not affected" (quoting Minn. Stat. § 609.377, subd. 4). We disagree. P.A.'s injuries did not consist only of multiple bruises; they consisted of marks deep enough to cause bleeding and scabbing resulting in some permanent scarring. Bloody wounds and permanent scarring are more serious than the bodily harm or bruising required to secure Austin's conviction. *See* Minn. Stat. § 609.02, subd. 7 (2012) (defining bodily harm as "physical pain or injury, illness, or any impairment of physical condition"); *State v. McDaniel*, 534 N.W.2d 290, 293 (Minn. App. 1995) (concluding that two-thirds-inch scar on chest and six-centimeter scar on neck were great bodily harm), *review denied* (Minn. Sept. 20, 1995).

Austin argues that the district court could not rely on permanent scarring because it is a type of great bodily harm that would support a conviction of malicious punishment under an uncharged provision, Minn. Stat. § 609.377, subd. 6 (2012). *See* Minn. Stat. § 609.02, subd. 8 (2012) (defining great bodily harm as "bodily injury . . . which causes serious permanent disfigurement"). Facts proving the defendant's guilt of an uncharged offense "cannot be relied upon as a ground for departure" because they "only support[] defendant's guilt of some other offense." *Edwards*, 774 N.W.2d at 602 (quotation omitted). But "it is generally proper for the court to consider the conduct underlying the

offense of which the defendant is convicted." *Shattuck*, 704 N.W.2d at 140. Because facts proving permanent scarring are part of the course of conduct underlying Austin's malicious punishment, they support a conclusion that Austin treated P.A. with particular cruelty. *See State v. Herrmann*, 479 N.W.2d 724, 730 (Minn. App. 1992) ("When the crime charged requires 'injury' alone, then the sentencing court can depart from the presumptive sentence when the victim's injuries are serious."), *review denied* (Minn. Mar. 19, 1992).

Austin argues that the district court erred by relying on his lack of remorse to support its particular-cruelty conclusion. We disagree. "As a general rule, a defendant's remorse bears only on a decision whether or not to depart dispositionally, not on a decision to depart durationally . . . ." *State v. Yang*, 774 N.W.2d 539, 564 (Minn. 2009) (quotation omitted). But "there may be cases in which the defendant's lack of remorse could relate back and be considered as evidence bearing on a determination of the cruelty or seriousness of the conduct on which the conviction was based." *State v. McGee*, 347 N.W.2d 802, 806 n.1 (Minn. 1984); *see, e.g.*, *State v. Chaklos*, 528 N.W.2d 225, 228 (Minn. 1995) ("[T]he sentencing court may take into consideration the offense-related conduct of trying to pin the blame for the offense on someone else."). This is such a case. At no time has Austin expressed remorse or accepted responsibility for his actions. His failure to do so supports a conclusion that Austin treated P.A. with particular cruelty. *See Dillon*, 781 N.W.2d at 600 ("Dillon's lack of remorse and refusal to accept responsibility for K.P.'s life-threatening injuries combine to constitute an aggravating factor on which the district court could base a decision to depart upward from the guidelines sentence.").

11

Austin argues that the district court erred by relying on his criminal history. "Generally the sentencing court cannot rely on a defendant's criminal history as a ground for departure" because "[t]he Sentencing Guidelines take one's history into account in determining whether or not one has a criminal history score and, if so, what the score should be." *State v. Magnan*, 328 N.W.2d 147, 149–50 (Minn. 1983). Here, notwithstanding the fact that the court mentioned Austin's criminal-history score, we disagree that the record suggests that the district court departed upward based on Austin's criminal history score. We conclude that the district court properly relied on Austin's particular cruelty as an aggravating factor that warrants the greater-than-double upward departure in this case.

"The presence of a single aggravating factor is sufficient to uphold an upward departure." *Weaver*, 796 N.W.2d at 571 (quotation omitted). We note that, in *Mohamed*, we remanded to allow the district court to determine whether the same or a different sentence should be imposed based on a single aggravating factor, because we could not "discern the weight given to the invalid [aggravating] factors as compared to the valid factor." 779 N.W.2d at 100. Here, although the district court relied on one valid aggravating factor, particular cruelty, and one invalid factor, particular vulnerability, we decline to remand because the court's order and statements at sentencing, as well as the factual record, leave us with no doubt that the court would have imposed the greater-than-double upward departure had it relied on only Austin's severe particular cruelty to P.A. *Cf. State v. Vance*, 765 N.W.2d 390, 395 (Minn. 2009) ("[A] double upward durational departure is appropriate on finding particular cruelty alone." (citing *State v.*

*Martinez*, 319 N.W.2d 699, 701 (Minn. 1982) ("We need not decide whether the facts cited by the state made the victim in this case 'particularly vulnerable' because it is clear to us that the defendant in this case committed the offense in a 'particularly cruel' way."))). The fact that the departure was only four months greater than a double departure supports our conclusion. *Cf. State v. Hodges*, 784 N.W.2d 827, 834 (Minn. 2009) ("[W]e are satisfied that the aggravating factors found by the district court are sufficiently severe to justify the . . . slightly greater-than-double-durational sentence.").

*Severity*

"[T]o impose a greater-than-double-durational sentence, there must be severe aggravating factors." *State v. Stanke*, 764 N.W.2d 824, 828 (Minn. 2009). "There remains 'no easy-to-apply test' of severity," and "the inquiry is unstructured." *Dillon*, 781 N.W.2d at 597. "A district court may evaluate the degree of cruelty inflicted on a child victim based on 'the nature and extent of the physical damage . . . .'" *Turrubiates*, 830 N.W.2d at 180 (quoting *State v. Partlow*, 321 N.W.2d 886, 887 (Minn. 1982)). "[W]e attach particular significance to the fact that permanent injury was inflicted." *State v. Van Gorden*, 326 N.W.2d 633, 635 (Minn. 1982). "In the final analysis, determining whether severe aggravating circumstances are present must be based on our collective, collegial experience in reviewing a large number of criminal appeals from all the judicial districts." *Rairdon v. State*, 557 N.W.2d 318, 327 (Minn. 1996) (quotation omitted). Based on the record evidence, our review of malicious-punishment caselaw, and our collective, collegial experience, we are persuaded that Austin's particular cruelty to P.A. was severe.

13

Here, the district court did not address explicitly whether Austin's particular cruelty was severe. But, based on Austin's atypical and particularly egregious malicious punishment of P.A., we have no reasonable doubt that the court believed that Austin's particular cruelty was severe. *See Stanke*, 764 N.W.2d at 828–29 (declining to remand when "atypical and particularly egregious" conduct left supreme court with no reasonable doubt that district court would find at least one aggravating factor to be severe); *see also Dillon*, 781 N.W.2d at 597 ("It is clear that the supreme court continues to review district court determinations of severity without affording great deference."); *Weaver*, 796 N.W.2d at 572–73 ("[W]hen the district court's stated departure reasons are improper or inadequate, an appellate court may independently examine the record to determine if there is sufficient evidence to justify departure, so long as the court does not engage in impermissible fact-finding.").

**Affirmed.**